64149. McAULEY et al. v. WILLS et al.

BIRDSONG, Judge.

Statute of Limitations — Wrongful Death. This is an appeal from an order dismissing the complaint of Mr. and Mrs. McAuley for the wrongful death of their infant child. Mr. and Mrs. McAuley filed their complaint on April 17, 1981, showing that Mrs. McAuley was a passenger in an automobile operated by defendant Wills which was involved in a one-car crash causing Mrs. McAuley to suffer paraplegia. The crash and consequential injuries occurred on March 31, 1979. Mrs. McAuley subsequently married and on August 7, 1980, gave birth to her first child, which died the following day from cardiac arrest caused by the infant's inability due to the mother's paraplegia to pass through the fetal course in an uneventful manner.

The McAuleys alleged the child's death was directly and proximately caused by the negligence of the defendant Wills. All the defendants jointly moved to dismiss the complaint against them on the ground that it failed to state a claim on which relief could be granted or alternatively that the action was barred by the applicable statute of limitations. The trial court, after hearing argument of counsel and examining the record, granted the motion to dismiss the complaint on the ground it did not state a claim on which relief could be granted. *Held:*

1. Although the trial court did not consider the alternative motion to dismiss as to the statute of limitations, we deem it necessary to refer thereto, for if the court is right for any reason in its order of dismissal, we will affirm.

2. The only alleged acts of negligence by Wills causing the accident and Mrs. McAuley's paraplegia occurred in March, 1979, a period in excess of two years prior to the filing of the suit in April, 1981. Mrs. McAuley's marriage followed the accident and in no way was related to Wills' negligence in driving. Conception of a child after

marriage likewise was in no way related to any negligence by Wills in March, 1979. Lastly, there is no indication that the birth process of the child was induced by any act of negligence by Wills. Therefore, it is manifest that the marriage and conception were unrelated to any negligence by Wills but were after the fact decisions and acts of Mr. and Mrs. McAuley. The infant's unfortunate death resulted only after the conception and birth of the child, both of which occurred after the accident and were not attributable to Wills (i. e., if there had been no birth, there could have been no death). By making the wrongful death of the child the basis of and the starting point of the cause of action, the McAuleys necessarily excluded as the direct proximate cause of death the earlier negligence of Wills whose actions at that time (1979) could not directly have affected a life not even yet conceived and thus not in being.

A case somewhat analogous is Cheney v. Syntex Laboratories, 277 FSupp. 386. In that case Cheney ingested medicine and was hospitalized for adverse side effects on or about April 20, 1965. On April 26, 1965 she suffered crippling injuries from a pulmonary embolism. Cheney brought suit on April 25, 1967, claiming solely for the injuries caused by the embolism two years earlier. However, as the negligent act was the furnishing of the medication and not the embolism the statute of limitations was held to bar the action because the real precipitant of the embolism was the ingestion of the medication on or before April 20, 1965, an act occurring at a time earlier than the two years permitted.

If such were not the rule, we would create a fissure in the law pertaining to limitations of actions. For instance, had the mother in this case been a five-year-old child who suffered injuries resulting in paraplegia, who fifteen years later married and gave birth to an infant, which infant died because of the negligently caused paraplegia of fifteen years earlier, under the rule proposed, the action for wrongful death still would not be barred if brought within two years of the death. Such cannot be the law.

Though it is undisputed that the cause of death of the infant was cardiac failure resulting from negligently caused paraplegia to the mother, the statute began to run at the time the damage caused by the tortfeasor was inflicted (the injuries to Mrs. McAuley) and the tort was completed at a time when the afterborn infant was not yet conceived and thus was neither sui generis nor sui juris. *Lavender v. Spetalnick,* 161 Ga. App. 75 (289 SE2d 291). Inasmuch as the tort against Mrs. McAuley was inflicted and completed in March, 1979, the statute of limitations as to the injuries to the parents including the wrongful death of their child, barred the suit filed in April 1981 based upon wrongful death flowing from that initially inflicted tort.

*Ward v. Griffith,* 162 Ga. App. 194 (290 SE2d 290); *Stoddard v. Woods,* 138 Ga. App. 770 (227 SE2d 403).

*Judgment affirmed. Deen, P. J., Shulman, P. J., Banke, and Sognier, JJ., concur. Pope, J., concurs in the judgment only. Deen, P. J., concurs specially in which Sognier, J., joins. Quillian, C. J., McMurray, P. J., and Carley, J., dissent.*

DECIDED DECEMBER 3, 1982 —
REHEARING DENIED DECEMBER 16, 1982.

*James L. Ford, Jule W. Felton, Jr., R. Matthew Martin,* for appellants.

*William P. Tinkler, Jr., Earl J. Van Gerpen, Donald M. Fain,* for appellees.

DEEN, Presiding Judge, concurring specially.

The dissenting opinion seems to primarily rely on *Hornbuckle v. Plantation Pipe Line Co.,* 212 Ga. 504 (93 SE2d 727) (1956). The latter cited case in turn is based on *Tucker v. Howard L. Carmichael & Sons,* 208 Ga. 201 (65 SE2d 909) (1951). Both of these cases establish a principle and policy of protection for an unborn child during the pregnancy of the mother. Former Chief Justice Duckworth stated it clearly in the *Hornbuckle* case, p. 505. "The ruling of the majority in this case extends that ruling to allow the child to maintain a suit for damages to the cell from which it came, even though the cell had been *conceived ten seconds.*" (Emphasis supplied.) The *Tucker* rule was evolved from one of the giants of common law jurisprudence, Lord Blackstone. "This court regards Blackstone as an authority on the common law. Accordingly, we quote from Book I, page 130, of Blackstone's Commentaries on the Laws of England as follows: 'The right of personal security consists in a person's legal and uninterrupted enjoyment of his life, his limbs, his body, his health, and his reputation. Life is the immediate gift of God, a right inherent by nature in every individual; and it begins in contemplation of law as soon as an infant is able to stir in the mother's womb . . . An infant in ventre sa mere, or in the mother's womb, is supposed in law to be born for many purposes. It is capable of having a legacy, or a surrender of a copyhold estate, made to it. It may have a guardian assigned to it; and it is enabled to have an estate limited to its use, and to take afterwards by such limitation, as if it were then actually born. And in this point the civil law agrees with ours.' " *Tucker v. Howard L. Carmichael & Sons,* supra, p. 203.

Judge Birdsong in his majority opinion is most persuasive in pointing out that the damage caused by the tortfeasor was done at the

time of the original injury to the mother, and the later cardiac failure of the child was too remote. Lord Bacon has said in his *Maxims:* "It were infinite that the law to judge the causes of causes, and their impulsions one of another; therefore it contenteth itselfe with the immediate cause, and judgeth of acts by that, and not looking to any further degree." In *Foundations of Legal Liability* (Vol. 1, p. 110, 1906), Professor Street has summed it up: "The terms proximate and remote are those respectively applied to recoverable and non-recoverable damages . . . It is unfortunate that no definite principles can be laid down by which to determine this question. It is always to be determined on the facts of each case upon mixed consideration of logic, *common sense, justice,* policy and precedent . . . The best use that can be made of the authorities on proximate cause is merely to furnish illustrations of situations which judicious men upon careful consideration have adjudged to be on one side of the line or the other." (Emphasis supplied.)

See also Ga. Code Ann. §§ 105-2008, 2009 (OCGA §§ 51-12-8, 9) as to remote damages.

The statute of limitations must run from the time of the original tort, otherwise the defendant who thought he had paid originally at the first tort for all claims whatsoever would never be safe even after many years had elapsed. The defendant did not directly injure the child who at the time of the mother's injury had not been conceived. It is now too remote to label the original injury of the mother as part of the proximate cause of the cardiac failure of the child.

I am authorized to state that Judge Sognier joins in this special concurrence.

McMurray, Presiding Judge, dissenting.

The majority affirms the trial court's judgment of dismissal for a different reason than that given by the trial court. The trial court dismissed the action as failing to state a claim, due to remoteness, although the motion to dismiss alternatively raised a question of the statute of limitation as likewise barring the action. The majority view does, however, also consider the remoteness of the occurrence from the original injury, hence the statute of limitation would bar the action. I do not agree.

At the outset it must be pointed out that this is a case of first impression of whether in Georgia one may maintain an action for wrongful death of a child not yet conceived when the alleged negligent acts were committed against the mother. Accordingly, I feel it necessary to review the facts as to what occurred and the time element involved.

This is an appeal from an order dismissing the complaint of a

father and mother for the wrongful death of their infant child. Plaintiffs' complaint, filed *on April 17, 1981,* states that the plaintiff mother was a passenger in an automobile operated by defendant Wills when it was involved in a one car crash extensively damaging the automobile and causing plaintiff extensive injuries, including spinal injuries causing paraplegia. The crash and consequential injuries occurred *on March 31, 1979.* Plaintiff subsequently became married, and *on August 7, 1980,* gave birth to her first child, which died the following day due to cardiac arrest caused by plaintiff mother's lack of ability due to her paraplegia to have the child pass through the fetal course in an uneventful manner.

Plaintiffs allege the child's death was directly and proximately caused by the negligence of the defendant Wills. Plaintiffs also set forth the claims for relief against defendant Ed Sherwood Chevrolet, Inc. (defendant Wills' employer and the owner of the automobile involved in the collision) on theories of agency and wrongful entrustment. Another claim for relief is against defendants Sherwood and Bradshaw, individually, on a theory of wrongful entrustment in recommending the employment of defendant Wills, a dangerous driver. Plaintiffs set forth further claims for relief against defendant Ed Sherwood Chevrolet, Inc., defendant Edward L. Sherwood, individually, and defendant Charles J. Bradshaw, individually, on the theory of conspiracy to furnish the automobile to a known incompetent driver, defendant Wills. Plaintiffs also set forth a claim for relief against Universal Underwriters Insurance Company, insurer of Ed Sherwood Chevrolet, Inc., on the theory of negligence in its conduct of its investigation of the driving record of new employees of Ed Sherwood Chevrolet, Inc., specifically, defendant Wills.

The defendants jointly moved to dismiss plaintiffs' complaint against them on the ground that it failed to state a claim on which relief can be granted and alternatively that the action was barred by the applicable statute of limitation. The trial court, after hearing argument of counsel and examining the record, granted the defendants' motion to dismiss plaintiffs' complaint on the grounds it does not state a claim on which relief can be granted. The trial court concluded that under the circumstances presented by the facts in this case the defendants owed no legal duty to a person not yet conceived at the time of the wrongful act.

Although the trial court did not consider the alternative motion to dismiss as to the statute of limitation, I deem it necessary to refer to same, as the majority has done, for if the court is right for any reason in its order of dismissal this court would affirm it.

Generally, if the essence of the action (wrongful death) is the injury to the person of the deceased, the period of limitation in this

state is two years from the death. See Code (1933) § 3-1004 (now OCGA § 9-3-33, effective November 1, 1982); *King v. Patellis,* 181 Ga. 157, 159 (181 SE 667). Accord, *Taylor v. Murray,* 231 Ga. 852, 854 (204 SE2d 747). Compare, *DeLoach v. Emergency Medical Group,* 155 Ga. App. 866 (274 SE2d 38). As alleged, the infant died of cardiac arrest shortly after birth on August 7, 1980, allegedly due to the mother's inability to give birth normally, and suit was filed on April 17, 1981 (served generally on the various defendants in April and May 1981). Accordingly, the statute of limitation does not bar this action.

Next, the prevailing law as to the Civil Practice Act in regard to motions to dismiss must be cited. A complaint is not required to set forth a cause of action, but need only set forth a claim for relief and is no longer to be construed more strongly against the pleader. See Code Ann. § 81A-108 (a) (Ga. L. 1966, pp. 609, 619; 1967, pp. 226, 230; 1976, pp. 1047, 1048) (now OCGA § 9-11-8, effective November 1, 1982). A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim. See *Mitchell v. Dickey,* 226 Ga. 218, 220 (1) (173 SE2d 695); *Gill v. Myrick,* 228 Ga. 253 (1), 259 (185 SE2d 72); *Oliver v. Irvin,* 230 Ga. 248, 249 (196 SE2d 429).

In the case sub judice the damage (death of the child) is alleged to have resulted from the paraplegia occurring to the mother on March 31, 1979 (the act done), preventing the normal birth of the child. Of course, the death of the infant was contingent first upon the mother becoming pregnant who was at that time suffering from paraplegia. However, the death of the infant was not too remote so as to prevent recovery since it clearly may be traced as a legal and material consequence of the acts done in injuring the mother. See Code (1933) § 105-2009 (now OCGA § 51-12-9, effective November 1, 1982). The resulting death cannot be held to be imaginative or speculative so as to bar recovery as a matter of law under Code (1933) § 105-2008 (now OCGA § 51-12-8, effective November 1, 1982), as being "too remote and [too] contingent to be recovered." Code § 105-2009, supra. It is alleged here that the damages resulting in the paraplegia to the mother were caused by actions of the defendants which were the proximate cause of the infant's death. In the case sub judice, we are concerned with proof of evidence to substantiate these allegations unless the pleadings show beyond doubt that there could be no recovery for the wrongful death. Whether or not the paraplegia of the mother could reasonably have been anticipated or foreseen as preventing a normal birth remains for determination upon evidence, otherwise the alleged wrongdoers here may be held responsible for all of the consequences resulting for no intervening causes have been

shown or alleged even though evidence may disclose otherwise.

The issue of proximate cause (as well as negligence and such related issues as assumption of the risk, lack of ordinary care for one's own safety and comparative and contributory negligence) is generally a question of fact for the jury's determination and may only be decided as a matter of law in clear and palpable cases where the evidence is so clear as to lead to only one conclusion, that is, that the defendants' acts were not the proximate cause of the plaintiffs' injury. See *Wakefield v. A. R. Winter Co.,* 121 Ga. App. 259 (174 SE2d 178); *Hanchey v. Hart,* 120 Ga. App. 677 (171 SE2d 918); *Charter Builders v. Sims Crane Service,* 150 Ga. App. 100, 101 (1) (256 SE2d 678); *Collins v. McGlamory,* 152 Ga. App. 114 (262 SE2d 262); *Cowart v. Five Star Mobile Homes,* 161 Ga. App. 278, 279 (291 SE2d 13).

This is a case of first impression (from our examination of the case law) in this state. Consequently, foreign cases must be examined for some enlightenment. However, the trial court refers to legal duty of the defendants as to foreseeability in that they "might or should have foreseen the results of their negligent acts," but then adopted the thesis that "[t]he concept of legal duty [should not] be extended" to factual situations as here where the child was "conceived some nine months after the collision." In this regard I refer to a Georgia case, *Hornbuckle v. Plantation Pipe Line Co.,* 212 Ga. 504 (93 SE2d 727), reviewing *Plantation Pipe Line Co. v. Hornbuckle,* 93 Ga. App. 391, 392 (91 SE2d 773), in a somewhat similar situation wherein injuries were inflicted to the mother "before the plaintiff [a stillborn child] become quick in its mother's womb, the injuries having been inflicted before the fourth month of pregnancy [and] the action will lie even if the injuries occurred before the plaintiff became quick if it later becomes quick and was born alive." The child in the case sub judice was born alive but died shortly thereafter due to an alleged cardiac arrest caused by the mother's earlier injury prior to the time the child was conceived, and this injury is the alleged cause of the injury to the child during birth.

Proceeding now to cases from foreign jurisdictions I refer to such supportive cases of Renslow v. Mennonite Hospital, 367 NE2d 1250; Jorgensen v. Meade Johnson Laboratories, 483 F2d 237; Park v. Chessin, 387 NYS2d 204 and Bergstreser v. Mitchell, 577 F2d 22, although there are other cases holding no legal duty arises unless harm is reasonably foreseeable. However, the legal duty is not to be predicated solely on the factor of foreseeability alone. I do not believe that the situation here would result in infinite liability for all wrongful acts so as to provide for endless litigation. I, therefore, am of the opinion that we should adopt the rule, at least as to the filing of this particular claim for the injuries the child received resulting in its

wrongful death, as expressed in Renslow v. Mennonite Hospital, supra at page 1251, that a child "not conceived" at the time the negligent acts were committed could maintain or its death result in a claim against the tortfeasors.

I, therefore, respectfully dissent as in my view the trial court erred in dismissing plaintiffs' action and the case sub judice should be reversed. I am authorized to state that Chief Judge Quillian and Judge Carley join in this dissent.