39559. McAULEY et al. v. WILLS et al.

MARSHALL, Presiding Justice.

On March 31, 1979, Mrs. Gail B. Parker was a passenger in an automobile driven by Richard Lewis Wills. The automobile was involved in a one-car crash, causing Mrs. Parker to become a paraplegic. Mrs. Parker subsequently married Mr. Samuel Shawn McAuley, Sr., and she later became pregnant. On August 7, 1980, she gave birth to a child. However, the child died the following day from cardiac arrest caused by the infant's inability, due to the mother's paraplegia, to pass through the fetal course in an uneventful manner.

On April 17, 1981, this complaint for the wrongful death of the child was filed by Mr. and Mrs. McAuley against defendant Wills and others, alleging that the child's death was directly and proximately caused by the negligence of Wills in causing the car crash. The trial court granted the defendants' motion to dismiss, on the ground that the complaint failed to state a claim on which relief could be granted in that defendant Wills cannot be said to have owed a legal duty to the child who had not even been conceived at the time of the car crash.

On appeal, the Court of Appeals affirmed in an en-banc opinion.

*McAuley v. Wills,* 164 Ga. App. 812 (298 SE2d 594) (1982). Five judges reasoned as follows: The only alleged acts of negligence by Wills causing Mrs. McAuley's paraplegia occurred in March of 1979; conception and birth of the child were unrelated to any acts of negligence attributable to Wills; therefore, this wrongful-death action, filed in April of 1981, is barred by the two-year statute of limitations applicable to personal-injury actions. *Ward v. Griffith,* 162 Ga. App. 194 (290 SE2d 290) (1982); *Stoddard v. Woods,* 138 Ga. App. 770 (227 SE2d 403) (1976). Two judges concurred specially, on the ground that the infliction of injury to the mother cannot be considered the proximate cause of the death of the child. One judge concurred in the judgment only. And, three judges dissented, on grounds that the statute of limitations does not bar this wrongful-death action and that whether the negligence of Wills was the proximate cause of the child's death is a jury question. *Held:*

We affirm for the reasons given in the special concurrence.

1. It is true that a personal-injury action based upon negligence has a two-year statute of limitation, and there are holdings that the statute of limitation begins to run from the breach of duty and not when the extent of the resulting injury is ascertained. *Lavender v. Spetalnick,* 161 Ga. App. 75, 76 (289 SE2d 291) (1982) and cits. However, it has also been held that in a continuing tort a cause of action does not accrue so as to cause the statute of limitation to run until the plaintiff discovers, or with reasonable diligence should have discovered, both the injury and the cause thereof. *King v. Seitzingers, Inc.,* 160 Ga. App. 318 (287 SE2d 252) (1981) and cits.

In any event, this is a wrongful-death action, and the rule is that a wrongful-death action must be brought within two years from the death. *Taylor v. Murray,* 231 Ga. 852, 854 (204 SE2d 747) (1974), but see *DeLoach v. Emergency Medical Group,* 155 Ga. App. 866 (1) (274 SE2d 38) (1980). Therefore we conclude that the statute of limitation has not run on the claim being asserted here.

2. The right to recover for injuries sustained by a child in its prenatal state has undergone a long and interesting history which need not be repeated here. See Note, The Law and the Unborn Child: The Legal and Logical Inconsistencies, 46 Notre Dame Lawyer, 349 (1971); Gordon, The Unborn Plaintiff, 63 Mich. L. Rev. 579 (1965); Comment, The Law of Prenatal Injuries, 37 U. Colo. L. Rev. 271 (1965); Note, The Impact of Medical Knowledge on the Law Relating to Prenatal Injuries, 110 U. Pa. L. Rev. 554 (1962); White, The Right of Recovery for Prenatal Injuries, 12 La. L. Rev. 383 (1952); Prosser, The Law of Torts, § 55, p. 335 et seq. (4th Ed. 1971); Anno., Liability for Prenatal Injuries, 40 ALR3d 1222 (1971).

For our purposes it is sufficient to state that, as held by Mr.

Justice Holmes in the landmark decision in Dietrich v. Inhabitants of Northampton, 138 Mass. 14 (1884), the common-law did not recognize an action for prenatal injuries to a child; the common law rule was based on the idea that a duty could not be owed to an unborn plaintiff. Although Judge Boggs wrote a quite famous dissent in Allaire v. St. Luke's Hospital, 56 NE 638 (Ill. 1900) criticizing this view, it was followed by the courts of this country until the decision of the United States District Court for the District of Columbia in Bonbrest v. Kotz, 65 FSupp. 138 (D.C. 1946). That decision "brought about . . . the most spectacular abrupt reversal of a well settled rule in the whole history of the law of torts . . . So rapid has been the overturn that . . . it is now apparently literally true that there is no authority left still supporting the older rule." Prosser, supra, at pp. 336, 337.

Once there was recognition of the right to recover for prenatal injuries to a child, the courts continued to grapple with questions concerning whether the child had to be "quick"[1] in its mother's womb when the injuries were sustained, or whether the child had to be in a "viable"[2] state when the injuries were sustained, or whether the child had to survive birth, in order for an action to be maintained.

3. In this State, it was held in 1951 that a child, if quick in its mother's womb, could maintain an action for prenatal injury resulting from the negligence of the defendant. *Tucker v. Carmichael & Sons,* 208 Ga. 201 (65 SE2d 909) (1951). In *Porter v. Lassiter,* 91 Ga. App. 712 (87 SE2d 100) (1955), the rule of *Tucker* was applied in an action by the mother suing for the wrongful death of the child. However, in *Hornbuckle v. Plantation Pipe Line Co.,* 212 Ga. 504 (93 SE2d 727) (1956), in a personal-injury action brought on behalf of a surviving child who sustained prenatal injuries approximately eight months before birth, it was held that "if a child born after an injury sustained *at any period of its prenatal life* can prove the effect on it of a tort, it would have a right to recover." 212 Ga., supra, at pp. 504, 505. (Emphasis supplied.)

4. As cited in the dissent to the Court of Appeals' opinion in this case, there are only three known cases in this country authorizing a suit to be maintained for preconception, rather than prenatal, injuries. Bergstreser v. Mitchell, 577 F2d 22 (8th Cir. 1978);

---

[1] A "quick child" is defined as a child "that has developed so that it moves within the mother's womb." Black's Law Dictionary, 1415 (4th Ed., 1968).

[2] "Viable" is a "Term applied to a newly-born infant, and especially to one prematurely born, which is not only born alive, but in such a state of organic development as to make possible the continuance of its life." Black's Law Dictionary, supra, at p. 1737. " 'Viability' means 'capable of living' an independent existence outside the mother's womb." 46 Notre Dame Lawyer, supra, at p. 350, n. 12.

Jorgensen v. Meade Johnson Laboratories, 483 F2d 237 (10th Cir. 1973); Renslow v. Mennonite Hospital, 367 NE2d 1250 (Ill. 1977).

(a) In Bergstreser v. Mitchell, supra, it was held that a medical malpractice action could be maintained on behalf of an infant, on the ground that the defendant physicians had negligently performed a caesarean section on the mother in 1972, causing rupture to her uterus after she became pregnant with the plaintiff in 1974, thereby requiring her to undergo emergency premature delivery during the course of which the plaintiff sustained brain damage.

(b) In Jorgensen v. Meade Johnson Laboratories, supra, it was held that an action was maintainable against a pharmaceutical company on behalf of deceased and living Mongoloid children, on the ground that their Mongoloid condition resulted from the mother's taking birth control pills manufactured by the defendant.

(c) In Renslow v. Mennonite Hospital, supra, it was held that an infant could maintain an action for prenatal injury sustained by her as a result of negligent transfusion of blood into the mother several years prior to the infant's birth.

(d) In Park v. Chessin, 387 NYS2d 204 (1976), a New York trial court held that the parents of a deceased three-and-one-half-year-old child could maintain a medical malpractice action for pain and suffering to the child, on the ground that the defendants had advised the mother to conceive and bear a child when it was foreseeable that the child would suffer from congenital defects. However, this ruling was reversed by the New York appellate court in Park v. Chessin, 413 NYS2d 895 (1978).

5. To the extent that the trial court ruled that a person owes no duty of care toward an unconceived child, we must disagree. Cases cited in Division 4, supra, show that, at least in some situations, a person should be under a duty of care toward an unconceived child.

However, we do hold that negligence of the defendant Wills and the injuries resulting in the death of McAuley's child are too remote for the law to sanction a recovery against Wills for the child's death. Our holding in this regard is based on one of two assumptions. First, assuming that the car crash in 1979 left Mrs. McAuley wholly unable to give birth to a child, this would be an element of damages recoverable by her in the personal-injury action on her own behalf, which is currently being litigated. Second, assuming that the car crash did not leave Mrs. McAuley wholly unable to give birth to a child, then the delivery of the child in a manner incompatible with the mother's paraplegia constituted an intervening act not reasonably foreseeable at the time of the car crash. E.g., *Stevens v. Baggett,* 154 Ga. App. 317 (2) (268 SE2d 370) (1980).

To hold that an intervening act was not reasonably foreseeable at the time of the defendant's negligent conduct is to say that the defendant's negligence was not the proximate cause of the plaintiff's injury. Prosser, supra, at p. 250. Although what amounts to proximate cause is undeniably a jury question, it will be determined by the court as a matter of law in plain and undisputed cases. *Callaway v. Pickard,* 68 Ga. App. 637, 641 (23 SE2d 564) (1942) and cits. We hold that this is such a case.

As pointed out in Justice Weltner's dissent, a holding that a defendant's conduct is not the proximate cause of the plaintiff's injury does not constitute a determination that the defendant's conduct is not a cause in fact of the plaintiff's injury, but rather is in the nature of a policy decision by the court that, for a variety of reasons, e.g., intervening act, the defendant's conduct and the plaintiff's injury are too remote for the law to countenance a recovery. As pointed out by Professor Prosser in his treatise, the proximate-cause rubric has been used as another way of saying, among other things, that the defendant was under no duty to protect the plaintiff from the injury which in fact occurred. Prosser, supra, at p. 244.

*Judgment affirmed. All the Justices concur, except Smith and Weltner, JJ., who dissent.*

DECIDED MAY 11, 1983.

*Jule W. Felton, Jr., R. Matthew Martin, James L. Ford,* for appellants.

*Donald M. Fain, William P. Tinkler, Jr., Earl J. Van Gerpen, David L. Harrison,* for appellees.

WELTNER, Justice, dissenting.

1. This case provides an opportunity to review the legal implications of causation, which is *always* a question of fact and *never* a principle of law. Those implications abound in bewildering profusion, as so many avatars of the Hindu pantheon. We have striven mightily to define and delineate these concepts: proximate cause, comparative negligence, contributory negligence, equal negligence, last clear chance, assumption of risk, duty of avoidance, concurrent negligence, remoteness, contingency, foreseeability, duty to exercise care for one's own safety, mitigation of damages, probable consequences, intervening act, accident, dangerous instrumentalities, imputed negligence, *res ipsa loquitur,* existence and extent of duty.

All of these (and doubtless more) are but differing aspects of the same inquiry — causation — so that their expositors seem uncomfortably akin to the fabled blind men describing in varying terms the same elephant.

Perhaps by resorting to another discipline we can more clearly see the *factum* from which all of our theories pend. Newtonian physics contains a definition of inertia, as follows: "The property of matter by which it will remain at rest, or in uniform motion in the same straight line or direction unless acted upon by some external force." *Webster's New International Dictionary,* 2nd Ed., Unabridged, *loc. cit.*

Transposing this definition into the realm of law, and to this case, "external force" is causation, and "at rest" is *status quo ante.* When an external force acts upon an object (whether real or incorporeal) so as in any way to alter any of its qualities, that external force is the causation of the resultant alteration. An example of immediate causation is the external force of fist striking cheek, and the resultant alteration of tissue into a black eye. An example of less immediate causation is the discharge of firecrackers, upsetting a scale which strikes poor Mrs. Palsgraf.

Another example of less than immediate causation is this very case.

There is, therefore, little difficulty in determining as a matter of *fact* that the conduct of Wills was causative to some extent of the death of the child, and hence of the damages to the mother under our wrongful death statute. *But for* the action of Wills ("external force") the mother's physical ability to give birth without section would have remained unchanged ("at rest") and the birth injuries to the child occasioned by the diminution of that ability ("resultant alteration") would not have caused the death of the child, and the mother would not have been damaged thereby.

The recognition which emerges from this analysis is that we (the authors of appellate opinions) have confused causation *in fact* with that causation for which the law will countenance a remedy. An example is the doctrine of equal negligence. Where a plaintiff's negligence is equal to or greater than that of the defendant, the plaintiff is barred from recovery. This result pertains *not* because the defendant's negligence is not causative to some extent of the injury to the plaintiff, but as a matter of policy. Similarly, the doctrine of last clear chance, where the plaintiff's own negligence is unquestionably causative to some extent of his own injury, but for policy considerations he is *not* debarred from recovery. Similarly, the doctrine of assumption of the risk, which is at its very base but an alternate statement of the rule of equal negligence.

In like manner, we have confused principles of foreseeability and remoteness — which are matters of policy — with the *fact* of causality, in effect saying that we will not approve recovery for injuries which are caused by a defendant when they are "remote," and not "reasonably foreseeable."

Translated, this means that those injuries which the law decides should be compensable are "reasonably foreseeable," and that those injuries which the law decides should not be compensable are "remote." These terms are, therefore, not standards of measurement, but conclusions derived from policy considerations.

I believe Professor Prosser would agree with this analysis. "Once it is established that the defendant's conduct has in fact been one of the causes of the plaintiff's injury, there remains the question whether the defendant should be legally responsible for what he has caused. Unlike the fact of causation, with which it [proximate cause] is often hopelessly confused, this is essentially a problem of law. It is sometimes said to be a question of whether the conduct has been so significant and important a cause that the defendant should be legally responsible. But both significance and importance turn upon conclusions in terms of legal policy, so that this becomes essentially a question of whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred." Prosser, *Law of Torts,* 4th Ed., at p. 244.

The final two paragraphs of the majority opinion recognize these precepts, as does Judge Deen's concurring opinion in the Court of Appeals, *McAuley v. Wills,* 164 Ga. App. 812 (298 SE2d 594) (1983), which includes this pertinent observation by Professor Street: "The terms 'proximate' and 'remote' are thus respectively applied to recoverable and non-recoverable damage . . . It is unfortunate that no definite principle can be laid down by which to determine this question. It is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent. . . . The best use that can be made of the authorities on proximate cause is merely to furnish illustrations of situations which judicious men upon careful consideration have adjudged to be on one side of the line or the other." *Foundations of Legal Liability,* Vol. 1, p. 110 (1906).

To speak in terms of the existence *vel non* of a "duty" (as Prosser does, supra, p. 244) is of little help, as the declaration of a "duty" is nothing more than the determination that in a given case (causality being established in *fact* ) recovery, as a matter of policy, should be permitted in *law.* Along the same lines relative to "right" (the reciprocal of "duty") see my special concurrence in *Martin Luther King, Jr. Center v. American Heritage Prods.,* 250 Ga. 135, 149 (296

SE2d 697) (1982).[1]

2. The majority's Division 4 contains an analysis of cases which have permitted the maintenance of injuries stemming from conduct prior to the conception of the person adversely affected. In each case, a court has recognized the causality of a defendant's conduct and has decided, as a matter of policy, that recovery will not be barred because the ultimate impact of that conduct fell upon one who was not conceived at the time of that conduct.

I see but two possible differences in the case before us and those outlined by the majority — both immaterial. The first is that there is no apparent question of concurrent negligence of third parties, as there may be in this case, and the second is that the cause of the action is primary rather than, as here, derivative. Neither of those considerations is a ground for barring this plaintiff's action, as our law encompasses concurring negligence, and a plaintiff is damaged all the while, whether the cause of action be direct or derived.

Thus, we are faced with the question of whether or not this state has a policy which would prohibit recovery. I suggest that no such policy exists independent of statutes of limitation or repose. I know of no statute of repose which would apply here, and the statute of limitations is that relating to wrongful death, as applied in *Clark v. Singer,* 250 Ga. 470 (298 SE2d 484) (1983). The action for wrongful death being filed within two years from the date of the death of the child, it is timely.

3. The suggestions I have outlined above are in disagreement, to some extent, with all of the other opinions written in this case, both that of the majority of our Court, and the three opinions in the Court of Appeals. Because the object of this dissent is, hopefully, to develop some clarity in the realm of causation, I note here the outlines of that disagreement.

(a) As to the majority of our Court, I agree that there is, in fact, a

---

[1] The statutory law of our State in this realm is contained in OCGA §§ 51-12-8 and 51-12-9 (Code Ann. §§ 105-2008, 105-2009), drawn directly from the Code of 1863 (§§ 3004 and 3005), as follows:

"If the damage incurred by the plaintiff is only the imaginary or possible result of a tortious act or if other and contingent circumstances preponderate in causing the injury, such damage is too remote to be the basis of recovery against the wrongdoer." OCGA § 51-12-8 (Code Ann. § 105-2008).

"Damages which are the legal and natural result of the act done, though contingent to some extent, are not too remote to be recovered. However, damages traceable to the act, but which are not its legal and natural consequence, are too remote and contingent to be recovered." OCGA § 51-12-9 (Code Ann. § 105-2009).

Viewed in the light of the above analysis, our statutes provide not so much a statement of policy as an example of circumlocution.

case for causal connection between Wills' conduct and the child's death, but disagree with its holding that policy prohibits recovery. Such a policy prohibition is enunciated by the majority's use of the terms, "too remote," "intervening act not reasonably foreseeable," and "not the proximate cause" (page 6 of the opinion). I further disagree with the majority's statement that "proximate cause is undeniably a jury question." If "proximate cause" means causation which as a policy matter will give rise to recovery, it is *not* a factual inquiry at all, but one of law.

(b) I disagree with the majority of the Court of Appeals in its holding (page 813) that "the earlier negligence of Wills . . . could not directly have affected a life not even yet conceived and thus not in being," as the causal connection of that conduct and the child's death is a question of fact for the jury.

(c) I disagree with the concurring opinion in its holding that the statutory period of limitation commences with the date of Wills' conduct, and not with the date of the child's death (page 815). See *Clark v. Singer,* supra.

(d) Finally, I disagree with the dissent in its proposition that "[w]hether or not the paraplegia of the mother could reasonably have been anticipated or foreseen as preventing a normal birth remains for determination upon evidence, . . . ." (page 817) because this must be resolved upon legal policy as enunciated by the Court, and not upon finding of fact as discerned by the jury.

Causation is always a question of fact. Legal responsibility for causation, once established, is always a question of law.

4. I well understand that the reasoning behind this opinion might possibly subject persons to lawsuits many years after an event which is claimed to be causative of injury, as is already the case in a *Clark v. Singer* situation. This consequence requires address by the General Assembly through the enactment of more comprehensive statutes of limitation and of repose. As to this plaintiff, however, there is clearly a causal connection between the death of her child and the conduct of the defendant, and her claim was brought within the appropriate period of limitation.

SMITH, Justice, dissenting.

Although I agree with much of what is said in Justice Weltner's dissent, I write separately to emphasize several points which I think are important. First, I note that today's majority opinion, while affirming the trial court's dismissal of the plaintiff's lawsuit, breaks new ground in Georgia tort law by recognizing for the first time that "at least in some situations, a person should be under a duty of care toward an unconceived child." This declaration, while significant, is

not really surprising; recognition of a preconception tort is logically consistent with this court's prior progressive holdings in cases on prenatal torts and consonant with the better reasoned cases from foreign jurisdictions. See *Hornbuckle v. Plantation Pipe Line Co.,* 212 Ga. 504 (93 SE2d 727) (1956); *Porter v. Lassiter,* 91 Ga. App. 712 (87 SE2d 100) (1955); *Tucker v. Carmichael & Sons,* 208 Ga. 201 (65 SE2d 909) (1951); Renslow v. Mennonite Hospital, 67 Ill. 2d 348 (367 NE2d 1250) (1977); Bergstreser v. Mitchell, 577 F2d 22 (8th Cir. 1978); Jorgensen v. Meade Johnson Laboratories, 483 F2d 237 (10th Cir. 1973).

Despite its recognition of the preconception tort, the majority reaches the wrong result in this case, ostensibly because "the negligence of the defendant Wills and the injuries resulting in the death of McAuley's child are too remote . . ." This conclusion, based on considerations of "proximate cause," is incorrect for two reasons.

Causation is a jury question, and this case was erroneously taken from the jury by the trial judge's grant of the motion to dismiss. Wills' burden on the motion to dismiss was a heavy one, which was not satisfied in this case. Under the modern rules of procedure and our Civil Practice Act, a complaint need only set forth a claim for relief, and is no longer construed most strongly against the pleader. See OCGA § 9-11-8 (Code Ann. § 81A-108). " ' "A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim. If, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient." ' " *Oliver v. Irvin,* 230 Ga. 248, 249 (196 SE2d 429) (1973). We should reverse on the narrow ground that the trial court erred when it granted Wills' motion in this case.

More important is the question of duty. Contrary to the majority opinion, I believe the controlling issue in this appeal is not causation, but duty — specifically, whether under the facts of this case Wills owed a legal duty to a child not yet conceived at the time of his alleged negligent conduct. I think such a duty exists and that McAuley should be allowed to present her case to the jury.

According to Professor Leon Green, any negligence case may be analyzed by reference to four separate, but interrelated, steps. They are: "(1) Did defendant's conduct contribute to the victim's injury (the causal relation issue)? (2) Was the victim protected under the law against the defendant's conduct with respect to the injury inflicted on him (the duty issue)? (3) Did defendant violate his duty under the law with respect to the victim's injury (the negligence issue)? (4) What is the evaluation in money of the losses suffered by

the victim as a result of his injury (the damage issue)?" Green, The Causal Relation Issue in Negligence Law, 60 Mich. L. Rev. 543 (1962). A brief review of these four steps will, I believe, place the real issues in this case in a clearer light.

## The Causal Relation Issue

"The beginning point of all tort liability is affirmative conduct, and the *first* step in establishing a defendant's liability is to identify him and connect his conduct with the victim's injury." Id. at 546. "The [causal relation] inquiry is limited to the fact of the defendant's contribution to the injury . . . Conduct is a factual concept; the victim's hurt is a factual concept; causal relation is a factual concept. Duty, negligence, and damages are legal concepts and depend upon different considerations from those involved in the determination of causal relation." Id. at 548-49. Thus the causal relation issue remains ever the same: Did the defendant's conduct contribute to the plaintiff's injury?

As long as the evidence will support a reasonable inference that the defendant's conduct played a part in the victim's injury (even though other inferences can be drawn as to causation), it is for the jury, not the judge, to decide the issue of factual causation. See Sanders v. Atchison, 336 P2d 324 (N. Mex. 1959). In nearly every case contributing causes can be identified, and serious questions of duty, negligence and damages may arise. But in negligence cases all the trial court needs to know about causation is that the defendant's conduct contributed to the injury. See Hart & Honore, Causation in the Law, 103 (1959). If so, then the case should go to the jury. Presiding Judge McMurray's dissent in the Court of Appeals was eminently correct on this point: "The issue of proximate cause (as well as negligence and such related issues as assumption of the risk, lack of ordinary care for one's own safety and comparative and contributory negligence) is generally a question of fact for the jury's determination and may only be decided as a matter of law in clear and palpable cases where the evidence is so clear as to lead to only one conclusion, that is, that the defendants' acts were not the proximate cause of the plaintiffs' injury." *McAuley v. Wills,* 164 Ga. App. 812, 818 (298 SE2d 594) (1982). The evidence was not "clear and palpable" in this case.

## The Duty Issue

Once the causal relation between the defendant's conduct and the victim's injury is established, the inquiry is directed to the defendant's duty to the victim. "This is a policy problem — a matter of law. The usual inquiry made of an advocate for the plaintiff in a doubtful case is: 'Have you any law to support your claim?' This is the whole import of the duty concept . . . In most cases the law has already

been determined by former decisions or by statute under which a doctrine or rule governing defendant's conduct is firmly established. But if defendant's conduct is different in some significant respect from that involved in former cases, it must be determined whether the rule or doctrine relied on should be expanded, modified, or reformulated to include or exclude the conduct of defendant which contributed to the victim's hurt. If there is no law at hand, the court may be called upon to make new law, and this it does however it may rule. Since courts must of necessity rely heavily upon legal concepts and rules for the administration of law, their concepts and rules must be under continuous reconsideration in order that they may be adjusted to accommodate the facts of new cases. It is in this way that the law grows and escapes sterility." Green, supra, at 563-64. See Elbert v. City of Saginaw, 363 Mich. 562, 563 (109 NW2d 879) (1961). If this were not true then the law of torts would never have emerged from the criminal law, prenatal injuries would never have been recognized, and the Georgia courts would never have progressed from recognizing prenatal injuries to the quick fetus to prenatal injuries to the fetus at any time after conception, then to the present recognition by the majority that at least in some situations a person should be under a duty of care toward an unconceived child. With this record of progress in foreign and Georgia law and the majority's concession that in some situations a duty of care extends to an unconceived child, this case is a perfect example of where a jury should be allowed to decide liability based upon the facts presented here.

This is certainly true in view of the policy in Georgia of favoring protection of unborn persons. See *Tucker v. Carmichael,* supra (prenatal tort action); OCGA § 44-6-65 (Code Ann. § 85-706) (protection of unborn's property interests); OCGA § 16-5-80 (Code Ann. § 26-1105) (crime of feticide); OCGA § 16-12-140 (Code Ann. §§ 26-1201, 26-1204) (regulation of abortion). See generally Stubbs, Georgia Law of Children, §§ 167, 168, 169, 190, 227 (1969). Recognition of a preconception tort is a proper exercise of this court's law-making function, and is consistent with OCGA § 9-2-3 (Code Ann. § 3-105), which provides that "[f]or every right there shall be a remedy; every court having jurisdiction of the one may, if necessary, frame the other."

The holding by this court in *Hornbuckle v. Plantation Pipe Line Co.,* supra, that an unborn child has a cause of action as the result of any injury received at any time after conception, together with the majority's recognition that a person may owe a duty of care to preconceived children, certainly provides legal support for a policy of care toward preconceived children. I feel that with this legal background, the cases from other jurisdictions, and the facts in this

case, the defendant owed a duty of care to avoid preconception injury to McAuley's child. The trial court's grant of summary judgment precluded the jury from deciding whether under the facts of this case the defendant breached this duty.

### The Negligence Issue

Once duty has been defined by the courts, it remains to be determined in a particular case whether the defendant violated his duty to the victim. In other words, was the defendant negligent? As a rule this is a question of fact for the jury to decide. "The negligence concept by its very terms is '*failure* to exercise care at some stage of an undertaking assumed by the defendant.'" Green, supra, at 571. As to foreseeability, the rule in Georgia is that "[i]n order for a party to be liable as for negligence, it is not necessary that he should have been able to anticipate the particular consequences which ensued. It is sufficient, if in ordinary prudence he might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might result." *Williams v. Grier,* 196 Ga. 327, 337-338 (26 SE2d 698) (1943). See also *Mixon v. Dobbs Houses, Inc.,* 149 Ga. App. 481 (254 SE2d 864) (1979). In addition, the unforeseeability of the manner in which a result is brought about does not relieve the defendant of responsibility. Bunting v. Hogsett, 139 Pa. 363 (21 A 31) (1891).

### The Damage Issue

Again, this is an area where the jury, guided by proper instructions from the court, is given wide latitude in a negligence case. "[S]o long as the amount is not outrageously large or small it will usually be permitted to stand in absence of some overt misconduct of the jury or in absence of some vital error committed in the trial process." Green, supra, at 575. See *Atlanta Metallic Casket Co. v. Hollingsworth,* 107 Ga. App. 594 (131 SE2d 61) (1963).

Because I would hold that defendant Wills owed a duty to avoid injury to the unconceived child of McAuley and that the case should have been submitted to the jury on the issue of causation, I respectfully dissent to Division 5 and would reverse.