OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Justine Michael, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

Grover et al. v. Eli Lilly and Company et al.

[Cite as Grover v. Eli Lilly & Co. (1992),     Ohio St.3d
.]

Torts -- Products liability -- Pharmaceutical company's liability for manufacture of a defective prescription drug does not extend to persons who were never exposed to the drug, either directly or in utero.

A pharmaceutical company's liability for the distribution or manufacture of a defective prescription drug does not extend to persons who were never exposed to the drug, either directly or in utero.

(No. 90-1030  --  Submitted February 11, 1992  --  Decided June 10, 1992.)

On Order from the United States District Court for the Northern District of Ohio, Eastern Division, Certifying a Question of State Law, No. C84-3.

This case comes to us as a certified question of state law from the United States District Court for the Northern District of Ohio, Eastern Division.  For the purposes of the certified question, petitioners assert the following theory of liability based upon an agreed statement of facts.  Respondents Cooper Laboratories, Inc. and Eli Lilly and Company manufactured and marketed diethylstilbestrol ("DES"), a defective prescription drug.  In 1952 and 1953, June Rose ingested DES while she was pregnant.  Her daughter, petitioner

Candy Grover, was exposed to DES in utero and was born with injuries to her reproductive organs, including the inability to carry a fetus to full term. Candy Grover subsequently delivered her son, petitioner Charles C. Grover, eleven weeks before term. Petitioners allege that as a result of his premature birth, Charles Grover suffers from cerebral palsy and other serious injuries.

Petitioners Candy Grover and Brent Grover, father of Charles and Robbie Grover, as his sons' representative, filed suit in the United States District Court for the Northern District of Ohio against Cooper Laboratories, Inc. and Eli Lilly and Company ("the pharmaceutical companies"). The pharmaceutical companies filed several motions for summary judgment, one of which states that Ohio law does not recognize a child's cause of action that is based on an actor's tortious conduct before the child was conceived. The district court certified the question to this court.

The cause is before this court pursuant to Rule XVI of the Supreme Court Rules of Practice.

Spangenberg, Shibley, Traci & Lancione, Donald P. Traci and William Hawal, for petitioners.

Jones, Day, Reavis & Pogue and Marc L. Swartzbaugh; Shook, Hardy & Bacon, Andrew See and Lisa White Hardwick, for respondent Eli Lilly & Company.

Mansour, Gavin, Gerlack & Manos Co., L.P.A., and

Michael T. Gavin, in support of petitioners for amici curiae, United Cerebral Palsy Associations, Inc. and DES Action USA.

Wright, J. The United States District Court for the Northern District of Ohio has certified the following question to us:

"Does Ohio recognize a cause of action on behalf of a child born prematurely, and with severe birth defects, if it can be established that such injuries were proximately caused by defects in the child's mother's reproductive system, those defects in turn being proximately caused by the child's grandmother ingesting a defective drug (DES) during her pregnancy with the child's mother?"

For purposes of this question, we are required to assume that Charles Grover can prove that his injuries were proximately caused by his mother's exposure to DES. We are not evaluating the facts of this case, but determining, as a matter of law, whether Charles Grover has a legally cognizable cause of action.

DES was prescribed to pregnant women during the 1940s, 1950s and 1960s to prevent miscarriage. The FDA banned its use by pregnant women in 1971 after medical studies discovered that female children exposed to the drug in utero had a high incidence of a rare type of vaginal cancer. See 36 Fed. Reg. 21,537 (1971). Candy Grover was exposed to DES as a fetus. Her son, Charles Grover, claims that his mother's DES-induced

injuries were the cause of his premature birth and resulting injuries.

Because the mother and the child whose injury results from her injury are uniquely interrelated, and because it is possible that the mother may not discover the extent of her own injury until she experiences difficulties during pregnancy, the facts of this case pose a novel issue. Courts and commentators refer to the child's potential cause of action in such cases as a "preconception tort." See, e.g., Note, Preconception Torts: Foreseeing the Unconceived (1977), 48 U.Colo.L.Rev. 621. The terminology stems from the fact that a child is pursuing liability against a party for a second injury that flows from an initial injury to the mother that occurred before the child was conceived.

Only a handful of courts have addressed whether a child has a cause of action for a preconception tort. One recurring issue is whether a child has a cause of action if a physician negligently performs a surgical procedure on the mother, such as an abortion or a Caesarean section, and the negligently performed procedure causes complications during childbirth several years later that injure the infant. See Albala v. New York (1981), 54 N.Y.2d 269, 445 N.Y.S.2d 108, 429 N.E.2d 786 (child has no cause of action for doctor's negligence during abortion performed four years prior to his conception); Bergstreser v. Mitchell (C.A.8, 1978), 577 F.2d 22

(construing Missouri law) (child has a cause of action against a doctor based on the doctor's negligence during a Caesarean section performed two years prior to the child's conception). In another malpractice suit, the Illinois Supreme Court recognized that a child had a cause of action against a hospital that negligently transfused her mother with Rh-positive blood eight years prior to the child's conception. Renslow v. Mennonite Hospital (1977), 67 Ill.2d 348, 367 N.E.2d 1250. As a result, the mother's body produced antibodies to the Rh-positive blood that later injured her fetus during pregnancy. See, also, Monusko v. Postle (1989), 175 Mich.App. 269, 437 N.W.2d 367 (allowing cause of action by child against her mother's physicians for failure to inoculate the mother with rubella vaccine prior to the child's conception).

In McAuley v. Wills (1983), 251 Ga. 3, 303 S.E.2d 258, the Supreme Court of Georgia evaluated a wrongful death action brought on behalf of an infant who died during childbirth due to the mother's paralysis. The suit was brought against the driver who had originally caused the mother's paralysis in an automobile accident. The court held that a person may owe a duty of care to a child conceived in the future, but also held that the injury in that case was too remote as a matter of law to support recovery. Id. at 6-7, 303 S.E.2d at 260-261. The driver could not reasonably foresee, as a matter of law, that his lack of care in driving a motor vehicle would result in

complications during the delivery of a child who was not yet conceived at the time of the accident.  Id.1

The facts of these cases are significantly different from those of the case before us.  The cause of action certified to us involves the scope of liability for the manufacture of a prescription drug that allegedly had devastating side effects on the original patient's female fetus.  However, this case is not about the devastating side effects of DES on the women who were exposed to it, which have indeed been well documented in medical studies and court opinions.  See authorities cited infra at        (Resnick, J., dissenting) and the discussion of the state of medical research at          (Resnick, J., dissenting).  This case is concerned with the rippling effects of that exposure on yet another generation, when that female child reaches sexual maturity and bears a child.  Because a plaintiff in Charles Grover's position cannot be injured until the original patient's child bears children, the second injury will typically have occurred more than sixteen years after the ingestion of the drug.

Several courts have addressed a fact pattern virtually identical to the facts of the case currently before this court. The New York Court of Appeals held that a child does not have a cause of action, in negligence or strict liability,  against a prescription drug company based on the manufacture of DES if the child was never exposed to the drug in utero.

Enright v. Eli Lilly & Co. (1991), 77 N.Y.2d 377, 568 N.Y.S.2d 550, 570 N.E.2d 198, certiorari denied (1991), 502 U.S.    , 112 S.Ct. 197, 116 L.Ed.2d 157.  The court relied in part on its earlier opinion in Albala v. New York, supra.  In both cases, the court was concerned with the "staggering implications of any proposition which would honor claims assuming the breach of an identifiable duty for less than a perfect birth and by what standard and the difficulty in establishing a standard or definition of perfection. * * *"  Id., 54 N.Y.2d at 273, 445 N.Y.S.2d at 109, 429 N.E.2d at 788.  See Enright v. Eli Lilly & Co., supra, 77 N.Y.2d at 384, 568 N.Y.S.2d at 553, 570 N.E.2d at 201.  The court was troubled by the possibility that doctors would forgo certain treatments of great benefit to persons already in existence out of fear of possible effects on future children.  Albala, supra, at 274, 445 N.Y.S.2d at 110, 429 N.E.2d at 788-789.  In Enright, the court noted that "the cause of action plaintiffs ask us to recognize here could not be confined without the drawing of artificial and arbitrary boundaries.  For all we know, the rippling effects of DES exposure may extend for generations.  It is our duty to confine liability within manageable limits * * *.  Limiting liability to those who ingested the drug or were exposed to it in utero serves this purpose."  Id., 77 N.Y.2d at 387, 568 N.Y.S.2d at 555, 570 N.E.2d at 203.  See, also, Loerch v. Eli Lilly & Co. (Minn. 1989), 445 N.W.2d 560

(the evenly divided Supreme Court of Minnesota affirmed, without opinion, a lower court's decision that a child who was not exposed to DES has no cause of action).

One court has held that a plaintiff situated similarly to Charles Grover has a cause of action. The United States Court of Appeals for the Seventh District reversed a lower court's directed verdict on the issue of a pharmaceutical company's liability to a child for injuries caused by a premature birth. McMahon v. Eli Lilly & Co. (C.A.7, 1985), 774 F.2d 830. The court concluded that under Illinois law the company could be liable for failing to warn of the dangerous propensities of the drug, and need not have anticipated a particular side effect. Id. at 834-835.

We find the reasoning applied by the New York Court of Appeals persuasive on the issue currently before us. As an initial matter, we note that the pharmaceutical companies' conduct must be evaluated based on whether they knew or should have known of a particular risk through the exercise of ordinary care. The marketing of prescription drugs differs significantly from other consumer goods. Each drug is tested and approved for use by the Food and Drug Administration and is selected for use by a physician, who then prescribes the drug to the ultimate user. As a result, the drug manufacturer's primary responsibility is to provide adequate warnings to the physician. Prosser & Keeton, Law of Torts (5 Ed.1984) 688,

Section 96.  The manufacturer does not breach its duty to warn --
in negligence, in strict liability for breach of warranty, or in
strict liability in tort -- until the company knew or should have
known of a particular risk through the exercise of ordinary care.
Id.; Crislip v. TCH Liquidating Co. (1990), 52 Ohio St.3d 251, 257,
556 N.E.2d 1177, 1182-1183, fn. 1.

It is on this point that Ohio law differs from Illinois
law as construed in McMahon v. Eli Lilly & Co., supra, 774 F.2d at 834-
835.  The Seventh Circuit held that knowledge of the general
dangerous propensities of the drug was sufficient to subject the
company to liability for failure to warn.  This court has stated
that "[i]n a products liability case where a claimant seeks
recovery for failure to warn adequately, it must be proven that
the manufacturer knew, or should have known, in the exercise of
ordinary care, of the risk or hazard about which it failed to
warn."  (Footnote omitted.)  Crislip v. TCH Liquidating Co., supra,
at 257, 556 N.E.2d at 1182-1183.  Even if knowledge of the drug's
"dangerous propensities" is sufficient to create liability to the
women exposed to the drug in utero, this same knowledge does not
automatically justify the extension of liability to those women's
children.  It is one thing to say that knowledge of a propensity
to harm the reproductive organs is sufficient to impose liability
for a variety of different injuries to the reproductive organs.
It is yet another thing to say that this

generalized knowledge is sufficient to impose liability for injuries to a third party that occur twenty-eight years later.2

Knowledge of a risk to one class of plaintiffs does not necessarily extend an actor's liability to every potential plaintiff. While we must assume that DES was the proximate cause of Charles Grover's injuries, an actor is not liable for every harm that may result from his actions.

"* * * The plaintiff sues in her own right for a wrong personal to her, and not as the vicarious beneficiary of a breach of duty to another." Palsgraf v. Long Island RR. Co. (1928), 248 N.Y. 339, 342, 162 N.E. 99, 100. An actor does not have a duty to a particular plaintiff unless the risk to that plaintiff is within the actor's "range of apprehension." Id. at 344, 162 N.E. at 100. "* * * If the actor's conduct creates such a recognizable risk of harm only to a particular class of persons, the fact that it in fact causes harm to a person of a different class, to whom the actor could not reasonably have anticipated injury, does not make the actor liable to the persons so injured." 2 Restatement of the Law 2d, Torts (1965), Section 281, Comment c; Jeffers v. Olexo (1989), 43 Ohio St.3d 140, 142-143, 539 N.E.2d 614, 616-617. The existence of a legal duty is a question for the court, unless alternative inferences are feasible based on the facts. Palsgraf, supra, at 345, 162 N.E. at 101.

When a pharmaceutical company prescribes drugs to a woman, the company, under ordinary circumstances, does not have a duty to her daughter's infant who will be conceived twenty-eight years later. Charles Grover's injuries are not the result of his own exposure to the drug, but are allegedly caused by his mother's injuries from her in utero exposure to the drug. Because of the remoteness in time and causation, we hold that Charles Grover does not have an independent cause of action, and answer the district court's question in the negative. A pharmaceutical company's liability for the distribution or manufacture of a defective prescription drug does not extend to persons who were never exposed to the drug, either directly or in utero.

Judgment accordingly.

Moyer, C.J., Holmes and H. Brown, JJ., concur.

Sweeney, Douglas and Resnick, JJ., dissent.

FOOTNOTES:

1  The Supreme Court of Georgia limited its holding to the facts of the case before it. The Court of Appeals for New York has taken the opposite approach and held that a plaintiff does not have a cause of action for any preconception tort, regardless of the facts alleged. See Albala v. New York (1981), 54 N.Y.2d 269, 445 N.Y.S.2d 108, 429 N.E.2d 786. It is this absolute rule that Prosser has criticized as a "blanket no-duty rule." See Prosser & Keeton, Law of Torts (5 Ed. 1984)

369, Section 55.

This court declines to adopt an absolute rule at this time, but addresses an alleged cause of action that is far more tenuous than that raised in Albala v. New York. See, also, Bergstreser v. Mitchell (C.A.8, 1978), 577 F.2d 22 (for a fact pattern similar to the facts of Albala v. New York). At least arguably, a doctor should comprehend, at the time that he or she performs an abortion or a Caesarean section, that a negligently performed procedure could cause the woman's uterus to rupture during a subsequent pregnancy. It is more difficult to imagine that a pharmaceutical company, during the 1940s to the 1960s, could have foreseen the effect that a drug would have not only on a patient's unborn child, but also on that child's children.

2  It is on this same point of law that the dissent confuses the issue by characterizing the question as whether the pharmaceutical companies should have known that DES could cause reproductive abnormalities in a developing fetus. The issue is not whether the pharmaceutical companies knew of some dangers from the use of this drug. To the contrary, the question is whether the drug companies should have known, at the time that it was prescribed, that DES could cause a birth defect that would result in the delivery of a premature child twenty or thirty years later. Modern studies may provide us with twenty-twenty hindsight, but the only medical studies

relevant to this issue are those that occurred before DES was banned in 1971.

Alice Robie Resnick, J., dissenting. I dissent from the result reached in this case, but more importantly from the superficial treatment of the issue which was certified to this court in light of its complexity.3 It is critical that we consider the exact issue which the federal court certified to this court: "Does Ohio recognize a cause of action on behalf of a child born prematurely, and with severe birth defects, if it can be established that such injuries were proximately caused by defects in child's mother's reproductive system, those defects in turn being proximately caused by the child's grandmother ingesting a defective drug (DES) during her pregnancy with the child's mother?"

As the devastating effects of DES continue to mount, so too does the legal debate concerning liability for the damage caused by the drug. For a detailed history of DES and its catastrophic effects, as well as its treatment by medical experts, see Hymowitz v. Eli Lilly & Co. (1985), 73 N.Y.2d 487, 541 N.Y.S. 2d 941, 539 N.E. 2d 1069; Bilcher v. Eli Lilly & Co. (1982), 55 N.Y.2d 571, 450 N.Y.S. 2d 776, 436 N.E. 2d 182; Zafft v. Eli Lilly & Co. (Mo. 1984), 676 S.W.2d 241; Collins v. Eli Lilly & Co. (1984), 116 Wis.2d 166, 342 N.W.2d 37. As the court in Enright v. Eli Lilly & Co. (1991), 77 N.Y.2d 377, 568 N.Y.S. 2d 550, 570 N.E.2d 198, certiorari denied (1991), 502

U.S.    , 112 S.Ct. 197, 116 L.Ed.2d 157, has indicated, "[t]he tragic DES tale is well documented in this Court's decisions and need not be recounted ***.  It is sufficient to note that between 1947 and 1971, the drug, a synthetic estrogen-like substance produced by approximately three hundred manufacturers, was prescribed for use and ingested by millions of pregnant women to prevent miscarriages.  In 1971, the Food and Drug Administration banned the drug's use for the treatment of problems of pregnancy after studies established a link between in utero exposure to DES and the occurrence in teen-age women of a rare form of vaginal and cervical cancer."  Id., 77 N.Y.2d 377 at 382, 568 N.Y.S.2d at 552, 570 N.E.2d at 200.  Plaintiffs in Enright had alleged that "in utero exposure to DES has since been linked to other genital tract aberrations in DES daughters, including malformations or immaturity of the uterus, cervical abnormalities, misshapen Fallopian tubes and abnormal cell and tissue growth, all of which has caused in this population a marked increase in the incidence of infertility, miscarriages, premature births and ectopic pregnancies."  Id.

In the present case, June Rose ingested DES during her pregnancy in 1952 and 1953.  June gave birth to Candace Grover on March 30, 1953.  Petitioners maintain that as a result of her mother's ingestion of DES, Candace was born with an incompetent cervix.  Candace gave birth, prematurely, to Charles Grover, who was born with cerebral palsy.  Petitioners

assert Charles' disabilities are directly and proximately attributable to his premature birth, which in turn was caused by his mother's DES-induced incompetent cervix.

The majority is persuaded by the rationale of the New York Court of Appeals' decision in Enright, supra. Although the basis of the holding is not entirely clear, the majority essentially holds that for public policy reasons there is no legal duty owed to a person who was not in utero at the time of injury.4 As does the court in Enright, the majority relies upon the DES manufacturers' age-old public policy arguments that the imposition of liability would invoke "staggering implications" and "rippling effects," or would require doctors to forgo certain treatments of great benefit to persons already in existence. But as the dissent in Enright cogently points out, "*** this sort of 'floodgates of litigation' [alarm] seems singularly unpersuasive in view of our Court's repeated admonitions that it is not 'a ground for denying a cause of action that there will be a proliferation of claims' and '* * *if a cognizable wrong has been committed, that there must be a remedy, whatever the burden of the courts.' * * * Beyond that, however, when defendants' arguments are applied here to urge that although the claims of DES daughters should be allowed the claims of the granddaughters should not be, their forebodings strike a particularly ironic note: i.e., the very fact of the 'insidious nature' of DES which may make the defendants liable

for injuries to a future generation is advanced as the reason why they should not be liable for injuries to that generation." Enright, supra, at 393, 568 N.Y.S.2d at 559, 570 N.E.2d at 207 (Hancock, J., dissenting).

I discern no sound basis, in law or public policy, for holding that there is no duty owed to persons in Charles Grover's position. We are dealing with a drug which was widely prescribed for many years to virtually millions of pregnant women. It was a drug which had FDA approval but, perhaps, was not adequately tested in view of a considerable body of scientific and medical literature that raised serious questions concerning the safety of DES to the developing fetus and its efficacy for treatment of pregnancy complications. Petitioners aver that, despite warnings from independent researchers dating back to the 1930s that DES caused reproductive tract abnormalities and cancer in exposed animal offspring, that drug companies, including Eli Lilly, performed no tests as to the effects of DES on the developing fetus, either in animals or humans. Petitioners also assert that by 1947 there were twenty-one studies which supported these findings; that recent medical studies have established a significant link between DES exposure and various uterine and cervical abnormalities in DES daughters; and that these studies have demonstrated that mature DES daughters have a significantly higher risk of miscarriage, infertility and premature deliveries.

In light of the foregoing there can be no question that pharmaceutical companies should have known the dangers of this drug. If in the 1930s and 1940s the manufacturers of DES knew or should have known of the reproductive system defects in the animal fetus exposed to DES, how then is it not foreseeable that this might mean abnormalities in the human fetus' reproductive system? In other words, it would appear that DES manufacturers knew or should have known that the human fetus exposed in utero might have a defect in the female reproductive system. Additionally, is it not then foreseeable that that female fetus would at some point seek to employ the defective reproductive system? The answer must be a resounding "yes." Hence, there can be no logic to the holding of the majority that "[b]ecause of the remoteness in time and causation, * * * Charles Grover does not have an independent cause of action." What could have a more direct causal connection than a premature birth by a woman who was known to have an incompetent cervix? From this it becomes readily apparent that DES grandchildren were a foreseeable group of plaintiffs. It can hardly be argued that there is no duty owed to a foreseeable plaintiff. In the landmark case of Palsgraf v. Long Island RR. Co. (1928), 248 N.Y. 339, 162 N.E. 99, the court held that an actor has a duty to all plaintiffs within the actor's "range of apprehension." Id. at 344, 162 N.E. at 100. Indeed, a federal court of appeals had recently stated: "There was sufficient

evidence from which a jury could reasonably have found that in 1955 Lilly knew or should have known that DES might cause reproductive abnormalities, such as prematurity, in the female offspring of women exposed to DES during pregnancy." McMahon v. Eli Lilly & Co. (C.A.7, 1985), 774 F.2d 830, 835-836.

While both foreseeability and proximate cause are readily apparent in this case, it is well recognized that in strict products liability claims, unlike causes of action sounding in negligence, the concepts of duty and foreseeability are of diminished significance. See Jorgensen v. Meade Johnson Laboratories, Inc. (C.A.10, 1973), 483 F.2d 237; Docken v. Ciba-Geigy (1987), 86 Ore.App. 277, 739 P.2d 591. Even the Enright court recognized this concept by citing its decision in Albala v. New York (1981), 54 N.Y. 2d 269, 445 N.Y.S. 2d 108, 429 N.E.2d 786, for this proposition. Additionally, Prosser & Keeton state: "A perplexing problem that remains in this area is whether claims should be permitted where the harmful contact with the mother occurs even before the child is conceived, as from ingestion of a defective drug causing chromosmal damage to the mother's ovum, or injury to her uterus during a preconception operation. A small number of courts have allowed recovery, but New York in a thinly reasoned case has recently ruled that a child has no cause of action for preconception torts upon the mother. * * * These are indeed staggering problems, that will have to be dealt with carefully in future

toxic tort contexts such as these, but they by no means require that a blanket no-duty rule be applied in pre-conception injury cases where such problems do not exist." (Emphasis added.) Prosser & Keeton, Law of Torts (5 Ed. 1984) 369, Section 55.

Conclusion

DES continues to create difficult legal and social problems nationwide. The majority has failed to consider the uniqueness of DES. Instead, it has simply applied an arbitrary "blanket no-duty rule." Today's holding will have profound and devastating effects. To hold under these circumstances that Charles Grover's injuries were not foreseeable is to ignore an entire body of scientific information which was available or could have easily become available with a measure of care concerning the effects of DES on subsequent generations.

Having reviewed and considered the competing public policy concerns, the case law recognizing preconception torts, respected legal commentary and the available scientific studies, I would conclude that individuals such as Charles Grover properly have a cause of action for their injuries. This in no way opens the floodgates because litigation can easily be concluded with Charles Grover's generation. Moreover, the majority completely disregards the fact that the petitioners still bear the burden of proving proximate cause. I strenuously dissent.

Sweeney and Douglas, JJ., concur in the foregoing

dissenting opinion.

FOOTNOTES:

3    While lengthy string cites are normally unnecessary, the following should adequately illustrate that there is indeed an abundance of authority on preconception torts which deserves consideration:  See Prosser & Keeton, Law of Torts (5 Ed. 1984) 369, Section 55; Annotation, Liability for Child's Personal Injuries or Death Resulting from Tort Committed Against Child's Mother before Child was Conceived (1979), 91 A.L.R.3d 316; Jorgensen v. Meade Johnson Laboratories, Inc. (C.A.10, 1973), 483 F.2d 237; Renslow v. Mennonite Hospital (1977), 67 Ill.2d 348, 10 Ill.Dec. 484, 367 N.E.2d 1250; Bergstreser v. Mitchell (C.A.8, 1978), 577 F.2d 22; Loerch v. Abbott Laboratories (Minn. Dist. Ct. 1988, Slip Op. No. 79-8720) affirmed (1989), 445 N.W. 3d 560; Monusko v. Postle (1989), 175 Mich.App. 269, 437 N.W.2d 367; Enright v. Eli Lilly & Co. (1991), 77 N.Y.2d 377, 568 N.Y.S.2d 550, 570 N.E.2d 198, certiorari denied (1991), 502 U.S.     , 112 S.Ct. 197, 116 L.Ed.2d 157; Note, The Impact of Medical Knowledge on the Law Relating to Prenatal Injuries (1962), 110 U.Pa.L.Rev. 554; Gordon, The Unborn Plaintiff (1965), 63 Mich.L.Rev. 579; Comment, Preconception Torts: Foreseeing the Unconceived (1971), 48 U.Colo.L.Rev. 621; Note, Torts Prior to Conception:  A New Theory of Liability (1977), 56 Neb.L.Rev. 706; Comment, Recognizing a Cause of Action for Preconception Torts in Light of Medical and Legal

Advancements Regarding the Unborn (1984), 53 UMKC L.Rev.78; Note, Enright v. Eli Lilly & Co.: Recognizing DES Granddaughter's Preconception Strict Products Liability Claim (1991), 17 J.Contemp.L. 175.

4    The reason the majority's holding is not clear is because in one breath it correctly states that "we are required to assume that Charles Grover can prove that his injuries were proximately caused by his mother's exposure to DES," but then ultimately concludes that "[b]ecause of the remoteness in time and causation, we hold that Charles Grover does not have an independent cause of action." (Emphasis added.)