Tyler LOUGH, a minor, by Carolyn
LOUGH, his Guardian &
Conservator, Appellant,

v.

ROLLA WOMEN'S CLINIC, INC.,
et al., Respondents.

No. 75749.

Supreme Court of Missouri,
En Banc.

Nov. 23, 1993.

Rehearing Denied Dec. 21, 1993.

David M. Remley, Donald P. Thomasson, Cape Girardeau, David L. Steelman, Rolla, for appellant.

Robert A. Wulff, Robert G. Brody, Patricia A. Manhart, St. Louis, Ronald R. McMillin, Kent L. Brown, Jefferson City, J. William Turley, Dan L. Birdsong, Charles Bennett, Rolla, for respondents.

HOLSTEIN, Judge.

Tyler Lough was born with multiple, irreversible, profound disabilities. According to a petition filed on his behalf, his condition is traceable to an error in reporting an Rh factor blood test performed on his mother in connection with a previous pregnancy in 1984. Concluding that no cause of action for preconception tort exists in this state, the trial court sustained motions for summary judgment. Following opinion by the Missouri Court of Appeals, Southern District, this Court granted transfer. *Rule 83.03.* The judgment is reversed.

## I.

On appeal from a summary judgment, the record is viewed in a light most favorable to the nonmoving party, and that party is granted the benefit of all favorable inferences. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). However, if the judgment of the trial court is sustainable on any grounds, it will not be overturned on appeal. *Swink v. Swink,* 367 S.W.2d 575, 578 (Mo.1963). The record is viewed with these principles in mind.

Tyler's mother has Rh negative blood. Tyler's older brother, Justin, born in 1984, has Rh positive blood. During delivery of Justin, some of his Rh positive blood entered his mother's bloodstream. The reaction of his mother's body was that her immune system became sensitized to Rh positive blood. Mrs. Lough's immune system dealt with the Rh positive blood as an invading substance and, following the delivery of Justin, her system developed antibodies to attack Rh positive blood in the future in a manner like the body's response to a vaccine. Tyler has Rh positive blood. Mrs. Lough learned of this problem in the fifth month of her pregnancy with Tyler, during November of 1986. During that pregnancy, antibodies in her system attacked Tyler's Rh positive blood. This condition is diagnosed as erythroblastosis fetalis, or EBF. Because Tyler's system was constantly under attack from a time commencing shortly after his conception until he was delivered, he sustained devastating pulmonary, cardiovascular and neurological damage.

The drug RhoGAM is designed specifically to prevent what occurred to Tyler. Administered within 72 hours of a woman giving birth to a child with an Rh factor different from hers, RhoGAM suppresses the mother's immune system response, preventing the sensitization that harmed Tyler.

The mother in this case was given prenatal treatment by Drs. Fortin and White at the Rolla Women's Clinic during both pregnancies. Blood was drawn at the clinic and sent to the Phelps Regional Medical Center for analysis during the earlier pregnancy. Kathy Jadwin, a lab technician, did the blood analysis. She claims to have correctly identified the blood as Rh negative but misrecorded it as Rh positive. This report was returned to the clinic. As a result, RhoGAM was not administered after Justin was born.

It is claimed that Kathy Jadwin was an employee of Phelps County Regional Medical Center and was an agent of Drs. H. Neal Brannemann, Delaine Wiench, and Richert Goyette, and Pathology Lab Consultants, Inc. All defendants filed motions for summary judgment, which were sustained. This appeal followed.

In the context of this case, "preconception tort" refers to negligent conduct which occurred prior to the plaintiff's conception.[1] The conduct in this case was that of Kathy Jadwin misrecording Mrs. Lough's blood type.

## II.

No Missouri court has addressed the question of whether preconception torts are actionable. Most jurisdictions that have addressed the question have permitted preconception tort actions. Among those permitting preconception tort actions are *Jorgensen v. Meade Johnson Laboratories, Inc.*, 483 F.2d 237 (10th Cir.1973) (construing Oklahoma law); *Bergstreser v. Mitchell*, 577 F.2d 22 (8th Cir.1978) (construing Missouri law); *Renslow v. Mennonite Hospital*, 67 Ill.2d 348, 10 Ill.Dec. 484, 367 N.E.2d 1250 (1977); *Monuska v. Postle*, 175 Mich.App. 269, 437 N.W.2d 367 (1989); *Hegyes v. Unjian Entp., Inc.*, 234 Cal.App.3d 1103, 286 Cal. Rptr. 85 (2nd Dist.1991); and *Walker v. Rinck*, 604 N.E.2d 591 (Ind.1992). Cases in which a claim for preconception tort was denied include *Albala v. City of New York*, 54 N.Y.2d 269, 445 N.Y.S.2d 108, 429 N.E.2d 786 (1981); *Grover v. Eli Lilly & Co.*, 63 Ohio St.3d 756, 591 N.E.2d 696 (1992); and *McAuley v. Wills*, 251 Ga. 3, 303 S.E.2d 258 (1983).

*Renslow v. Mennonite Hospital* recognized a cause of action in a case similar to this one. There an improper Rh blood transfusion was given to a mother by the defendant several years prior to the plaintiff's birth. The court in *Renslow* questioned whether there could be areas of foreseeable harm in which no duty arises. The court concluded there may

be situations in which a duty for a particular preconception tort might not be imposed. The example given there was, "Successive generations of plaintiffs complaining against a single defendant for a harm caused by genetic damage done an ancestor in a nuclear accident." 10 Ill.Dec. at 489, 367 N.E.2d at 1255. However, the court concluded that such situation is clearly distinguishable and that the damage in a case involving EBF was, by its nature, not self-perpetuating nor is the plaintiff remote. Indeed, the very reason for the RhoGAM treatment is to benefit later conceived children of the mother, while injury to those children in the absence of proper treatment is highly predictable. 10 Ill.Dec. at 487, 367 N.E.2d at 1253.

In addition to *Renslow*, every court addressing the specific issue presented here has consistently allowed an action for recovery by a child born with EBF following a defendant's failure to administer RhoGAM to an Rh negative woman who has given birth to an Rh positive child. *Empire Casualty v. St. Paul Fire and Marine Ins. Co.*, 764 P.2d 1191 (Co.1988), and *Walker v. Rinck, supra.*

The most draconian of rules among those cases denying a claim for a preconception tort is found in New York. *Albala v. City of New York, supra.* Based on a perceived inability to judicially establish perimeters on a duty owed to unconceived children and the fear that doctors will face a choice between the best treatment for the patient mother and protecting future offspring of the patient, New York has adopted a rule criticized by Prosser as a "blanket no-duty rule." *Prosser and Keator on Torts*, § 55 at 369 (5th ed. 1984). This position was reaffirmed most recently in *Enright v. Eli Lilly & Co.*, 77 N.Y.2d 377, 568 N.Y.S.2d 550, 570 N.E.2d 198 (1991). The courts of no other state have adopted that extreme view.

The other two preconception tort cases noted above denying the claims based their decisions on familiar principles of foreseeability. In *Grover v. Eli Lilly & Co.* the Ohio Supreme Court held that an injury to a child

---

1. "Preconception tort" is somewhat of a misnomer. Implicit in the concept of tort is a wrongful act resulting in an invasion of right or an injury. In Judge Cardozo's shorthand, "Proof of negligence in the air, so to speak, will not do." *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928). Here the injury did not occur until after conception.

of a mother exposed to a drug while the mother was *in utero* was not foreseeable, and no cause of action existed. 591 N.E.2d at 700. In *McAuley v. Wills, supra,* a wrongful death action was brought against a driver whose negligence paralyzed a woman. She later conceived a child but, due to her paralysis, the child was traumatized during birth and died a few hours after delivery. The Georgia Supreme Court reasoned that although a duty is owed to the unconceived child, the mother's delivery of the child in a manner inconsistent with paraplegia was an intervening cause, making the child's death an unforeseeable consequence. 303 S.E.2d at 260. Both Ohio and Georgia would likely recognize a preconception tort where there is no intervening cause and the treatment of the mother is specifically designed to benefit later conceived children.

The reason for not adopting a rule that would absolutely bar claims for preconception torts is demonstrated by the following hypothetical: Assume a balcony is negligently constructed. Two years later, a mother and her one-year-old child step onto the balcony and it gives way, causing serious injuries to both the mother and the child. It would be ludicrous to suggest that only the mother would have a cause of action against the builder but, because the infant was not conceived at the time of the negligent conduct, no duty of care existed toward the child. It is unjust and arbitrary to deny recovery to Tyler simply because he had not been conceived at the time of Kathy Jadwin's negligence.

The concern expressed in *Albala,* that liability will not be confined to manageable boundaries if preconception torts are permitted, is speculation. The respondents have not directed this Court to any indication that the states permitting preconception torts have been swallowed by the kind of apocalypse of liability actions envisioned by the *Albala* court. In addition, the concern that a physician might be called upon to make a treatment choice less favorable to his patient in an effort to avoid doing harm to future offspring of the patient does not exist in this case. As previously noted, Rh factor testing

and RhoGAM treatment are done exclusively for the benefit of the children and benefit the mother only by removing the risk that sensitization poses to those children. There is no beneficial treatment to the mother that might be foregone if recovery is allowed in this case. *See Walker v. Rinck,* 604 N.E.2d at 595.

■ The basic question in this case is whether a duty exists. Any question of duty depends upon a calculus of policy considerations. These include "the social consensus that the interest is worthy of protection; the foreseeability of harm and the degree of certainty that the protected person suffered injury; moral blame society attaches to the conduct; the prevention of future harm; considerations of cost and ability to spread the risk of loss; the economic burden upon the actor and the community." *Hyde v. City of Columbia,* 637 S.W.2d 251, 257 (Mo.App. 1982). Foreseeability is the paramount factor in determining existence of a duty, but a relationship between the parties where one is acting for the benefit of another also plays a role. *Hoover's Dairy, Inc., v. Mid–America Dairymen, Inc.,* 700 S.W.2d 426, 432 (Mo. banc 1985); *Prosser and Keeton on Torts,* § 42, p. 274 (5th ed. 1984). Each of the factors listed in *Hyde* and *Hoover's Dairy* militate in favor of the existence of a duty in this case.

■ Individual cases involving "preconception torts" can be sensibly analyzed under existing principles of tort law to determine if a duty exists in a particular case. Just as there is not a duty in every case when a plaintiff is alive at the time of some allegedly negligent conduct, there will not be a duty in every case where allegedly negligent conduct harms a plaintiff not yet conceived. It is sufficient to say that in this case, a duty exists.

■ The respondents make a series of other arguments in support of their claim that there is no duty. The first is that § 516.105,[2] which establishes that the date of the negligent conduct commences the running of the statute of limitations, means that

2. All references to statutes are to RSMo 1986,     unless specified otherwise.

there is no duty. That section is intended to limit the time within which suit may be brought and says nothing about those to whom a duty is owed.

■ Respondents claim that because Missouri does not allow a cause of action for wrongful life, see *Miller v. Duhart*, 637 S.W.2d 183 (Mo.App.1982), Tyler's claim is invalidated. Wrongful life was rejected because wrongful life would require finding a right to have never been born and it would require the courts to measure how the plaintiff might have benefitted by having never existed. Respondents further argue that this Court's decision in *Sullivan v. Carlisle*, 851 S.W.2d 510 (Mo. banc 1993), weighs against preconception tort. That case denied a plaintiff ad litem the right to pursue a wrongful death action because a plaintiff ad litem was not a "person" entitled to recover under the wrongful death statute, nor was anyone else living who was qualified to sue. In *Sullivan* it was not an absence of duty but an absence of a person entitled to recover damages occasioned by the death. In addition, respondents cite *Rambo v. Lawson*, 799 S.W.2d 62 (Mo. banc 1990), holding no wrongful death cause of action may be maintained for a nonviable fetus. Whether a nonviable fetus is a "person" in the context of § 537.080, the wrongful death statute, simply has no bearing on the question of whether a duty was owed by the defendants in this case. These arguments are rejected.

### III.

■ Respondents argue that even if a preconception tort exists, this one is barred by the statute of limitations found in § 516.-105, which states in part:

All actions against physicians, hospitals, ... and any other entity providing health care services and all employees of any of the foregoing acting in the course and scope of their employment, for damages for malpractice, negligence, error or mistake related to health care shall be brought within two years from the date of the occurrence of the act of neglect complained of, except that a minor under the full age of ten years shall have until his twelfth birthday to bring such action. . . .

Respondents argue that a minor must have been in existence at the time of the act of neglect to take advantage of the exception. While it is true that § 516.105 commences running of the two-year period at the time of the negligent conduct rather than the time of the injury, the statute, in equally clear and unequivocal terms, excludes actions by a minor under ten years of age from the two-year limit. Under the terms of the statute, Tyler, being under ten years of age, has until his twelfth birthday to bring this action. To hold otherwise requires reading words into the statute which are not there. Where no ambiguity exists, there is no room for construction. *Jones v. Director of Revenue*, 832 S.W.2d 516, 517 (Mo. banc 1992).

In *Walker v. Rinck, supra*, a statute of limitations under consideration provided that actions against health care providers must be brought within two years of the alleged misconduct. However, the statute further provided that "a minor child under the full age of six (6) years shall have until his eighth birthday in which to file." *Ind.Code*, § 16-9.5-3-1. The plaintiff in that case was conceived more than two years after the negligent conduct. The court held that even though stale claims may arise, the statute would be given effect as written. "It is for the legislature to change such a statute of limitation." 604 N.E.2d at 596. The statute in Indiana is indistinguishable from the one now under consideration. In *Bergstreser v. Mitchell, supra*, the United States Court of Appeals, construing § 516.105, concluded that a minor was entitled to the benefit of the exception, even though conceived more than two years after the negligent conduct. 577 F.2d at 26. *Walker* and *Bergstreser* are highly persuasive.

The defendants essentially make two arguments as to why the exception for minors is inapplicable. The first argument is that the exception is a tolling of the statute of limitations only during the minority of the child. The provision for children under ten years of age found in § 516.105 is not an ordinary tolling provision but a special statute of limitations applicable to claimants under the age of ten. Tolling statutes allow actions to be brought within the time limits otherwise al-

lowed by law "after [a] disability is removed." § *516.170*. The exception found in § 516.105 is more accurately described as a proviso because it removes "special cases from the general enactment and provides for them specially." *Sutherland Stat. Const.* § 20.22 (4th ed. 1985). The legislature clearly made special provision for time limits on claims against health care providers by children under ten years of age. Nothing in the words of the statute indicates the two-year time limit is tolled only during minority.

The defendants' second argument is that the exception in § 516.105 must be ignored because it was declared unconstitutional to the extent it deprived a minor of a cause of action in *Strahler v. St. Luke's Hospital,* 706 S.W.2d 7 (Mo. banc 1986). Oddly, respondents seem to believe that the result of *Strahler* was to eliminate any exception. The precise holding was that the general two-year limitation was unconstitutional as applied to a person fifteen years old at the time of the negligent conduct who did not file suit until she was nineteen years of age. It was the application of the two-year limit to minors over the "ripe old age" of ten that offended article I, § 14 of our constitution. 706 S.W.2d at 10. Obviously, the result of *Strahler* was to expand, not contract, the exception to the two-year time limitation found in § 516.105. Because Tyler Lough is under ten years of age, the statute of limitation had not run when this action was filed.

### IV.

There were other issues raised by some of the defendants in the motion for summary judgment, including the question of the agency of Jadwin for other defendants. Inasmuch as those issues were specifically not decided by the trial court, they need not be decided here.

The judgment is reversed and the cause remanded to the trial court for further proceedings consistent with this opinion.

BENTON, THOMAS and PRICE, JJ., concur.

GERALD M. SMITH, Special Judge, dissents in separate opinion filed.

COVINGTON, C.J., and LIMBAUGH, J., concur in opinion of GERALD M. SMITH, Special Judge.

ROBERTSON, J., not sitting.

GERALD M. SMITH, Special Judge, dissenting.

I respectfully dissent.

I do not disagree with the majority's conclusion that within the narrow parameters of the facts before us recognition of the existence of a pre-conception tort committed against this plaintiff is warranted and proper. The medical test involved is conducted for the benefit of subsequently born children of the mother in order to treat the mother so as to prevent the very conditions that afflicted plaintiff here. The medical procedure is for the direct benefit of the as yet unconceived child, and its negligent performance will directly injure that child. The procedure is not one that is primarily for the benefit of the mother and incidentally causes injury to the unconceived child. Within those narrow confines, I believe recognition of liability by the tortfeasor to the child is justified.

I reluctantly conclude, however, that the plaintiff's cause of action here is barred by the provisions of § 516.105, RSMo 1986. Our obligation is to determine the intent of the legislature in enacting the statute involved. Some history is pertinent in that regard. That history, prior to 1968, is recounted at length in *Laughlin v. Forgrave,* 432 S.W.2d 308 (Mo. banc 1968) and need not be repeated at length here. This Court stated the significance of that history as follows:

The significance of this legislative history, particularly that beginning with the year 1921, is that it shows clearly a legislative intent to treat particularly with medical malpractice actions and fix a specific date when the statute of limitation shall begin to run against those actions, a date different from the date and time when the statute begins to run against other actions covered by what is now § 516.140. Prior to 1921 the limitation period for malpractice actions was five years and prior to 1919, when the General Assembly amended § 1887, RSMo 1909, the limitation peri-

od commenced to run on the date the cause of action accrued. When the proviso was added by amendment of § 1887 by the Fiftieth General Assembly in 1919 the statute of limitation (the five-year statute) in malpractice actions commenced to run on the same date as actions for libel, slander, assault, etc., that is, not "... when the wrong is done ... but when the damage resulting therefrom is sustained and is capable of ascertainment ..." However, significantly, two years later, in 1921, the next General Assembly, the Fifty-first, with knowledge fresh in its mind of what had been done at the previous session to define by the proviso specifically when a cause of action shall be deemed to accrue and the meaningful effect of that proviso upon malpractice actions, amended § 1319 by adding § 1319a to provide that such actions "... shall be brought within two years from the **date of the act of neglect** complained of...." The result was that beginning with the revision of 1929, when §§ 1319 and 1319a (RSMo 1919) were combined and became § 864, RSMo 1929, we had two types of action in one section, one of which (libel, assault, etc.) did not have attached to it its own specific date from which the limitation period commenced to run and one (malpractice) which did.... Again, significantly, and indicative of its intent to treat malpractice actions differently from other actions so far as the date of commencement of the running of the statute is concerned, the General Assembly, in 1945, repealed and reenacted § 1016 by adding another type of action, those by employees for the payment of unpaid minimum wages, etc., and provided that such actions shall be brought within two years **after the cause accrued,** but left intact and unchanged the provision that malpractice actions shall be brought within two years from the date of the act of neglect.

*Id.* at 312–13 (emphasis in original) (footnotes omitted).

Based upon this analysis, the Court concluded that the exceptions dealing with accrual of the cause of action premised upon sustaining damage and ascertainment of that damage (the discovery provision), found in what is now § 516.100, RSMo 1986, did not apply to malpractice actions. *Laughlin, supra,* at [4]. In so deciding the Court held that plaintiff's claim arising from a rubber dam left in her body during previous surgery was time barred despite the fact that she did not know and could not know the cause of her pain. *Id.* The Court specifically stated that the plaintiff's argument posed to the Court should be directed to the General Assembly. *Id.*

In 1976, the General Assembly enacted Senate Bill 470, part of which became § 516.-105. That bill does several things. First, it creates a separate section dealing with medical malpractice, § 516.105, removing it from § 516.140, RSMo 1969, which deals with actions which must be brought within two years—libel, slander, assault, etc. Second, it requires that the action for malpractice be brought "within two years from the date of occurrence of the act of neglect complained of", § 516.105, RSMo 1986, rather than the previous language "within two years from the date of the act of neglect complained of", § 516.140, RSMo 1969. The language does not appear to make a substantive change in the commencement of the limitation period but apparently was intended to reinforce the clear direction that the two year period begins on the date of the "occurrence of the act" of negligence. Third, § 516.105 incorporates two exceptions to the limitations period. Apparently in response to the *Laughlin* decision, it engrafts a discovery period for cases arising from the "introducing and negligently permitting any foreign object to remain within the body of a living person." § 516.105, RSMo 1986. It further allows a minor under the full age of ten until his twelfth birthday to bring the action. *Id.* The last clause of the statute provides that "in no event shall any action for damages for malpractice, error, or mistake be commenced after the expiration of ten years from the date of the act of neglect complained of." *Id.* This Court subsequently held unconstitutional the restriction on minors which limited them to two years after their tenth birthday to bring the suit. *Strahler v. St. Luke's Hospital,* 706 S.W.2d 7 (Mo. banc 1986) [5]. Fourth, the bill provides that **"except as provided in**

§ 516.105" persons under the disabilities of minority, insanity, or imprisonment could bring actions "within the respective times in §§ 516.100 to 516.370 limited after such disability is removed." § 516.170, RSMo 1986 (emphasis added). In 1990, the disability of imprisonment was removed from § 516.170. RSMo Supp.1993.

In the case before us, more than two years elapsed between "the date of occurrence of the act of neglect complained of" and plaintiff's conception. The question before us then is whether, in that situation, the provision of § 516.105 granting to minors an exception to the statutory period applies. The majority concludes it does. I believe it does not. I do not view the issue as whether plaintiff was in existence at the time of the act of neglect. If he came into existence within two years of that time the minor exception applies.[1] The question not addressed by the majority is whether the minor exception applies where no injured minor exists until more than two years after the act of neglect. In that context the statute is ambiguous. It could mean, as the majority holds, that the "minor exception" serves to preserve a cause of action past the limitation period "in the air" until a minor arrives to claim it. On the other hand it could mean that the "minor exception" applies only to authorize a minor sustaining damage within the two year limitation period an additional period of time determined by his legal disability to bring the action.

Exceptions to the time constraints of statutes of limitation fall into basically two categories, which for convenience I will delineate as "disabilities" and "impracticalities". Disabilities exceptions are directed to those persons who because of their legal status are not authorized by law to pursue on their own behalf their legal remedies. Usually, that group is comprised of minors, the mentally incompetent, and, frequently, imprisoned felons. See Black's Law Dictionary 461 (6th ed. 1990). The "impracticalities" exceptions deal with factual situations in which the injured party is prevented, for reasons beyond his control, from pursuing his remedy. These include lack of knowledge or non-discovery of the injury or the damage (§ 516.-100), removal of the defendant from the jurisdiction (§ 516.200), existence of an injunction (§ 516.260), improper acts of the defendant preventing commencement of an action (§ 516.280), fraudulent concealment of the cause of action by the defendant (§ 516.280); *Miller v. Guze*, 820 S.W.2d 576 (Mo.App. 1991) [8, 9], and possibly others.

The exception in § 516.105 pertaining to minors is a disability exception, not an impracticalities exception. This is made abundantly clear in *Strahler, supra.* Therein, this Court determined that the twelve year limitation on the minority exception limited access to the courts to minors who would not reach majority within that period and was, therefore, unconstitutional. *Id.* at [5]. The exception is intended to furnish minors who have sustained injury from malpractice an opportunity to bring the action on their own behalf. It is not intended to engraft a "discovery" exception into the limitation statute although obviously in some situations the extended period for minors to bring suit may allow discovery of negligence and injury which would not have been otherwise discovered within the statutory period. That is simply a peripheral benefit of the exception, not the reason for its being. The only impracticality exception in § 516.105 is the one pertaining to the discovery of a foreign object negligently left in the body. Plaintiff makes no claim that exception applies to this case.

Section 516.105 is something of an anomaly. In many respects it more closely resembles a statute of repose than a true statute of limitations. *See* Francis E. McGovern, *The Variety, Policy and Constitutionality of Product Liability Statutes of Repose*, 30 Am. U.L.Rev. 579 (1981) [l.c. 587, 1st para.].[2]

---

1. For purposes of this case, I accept the proposition that "existence" begins at the moment of conception.

2. In that article, l.c. 632, 634, the author considers the Missouri malpractice statute as containing both a two year and a ten year statute of repose. A statute of repose may bar a cause of action before it ever accrues, *Id.* 585, or before injury occurs. *Id.* 586.

Dating the beginning of the statutory period from the date of the "occurrence" rather than from the date of "accrual" of the cause of action strongly suggests a statute of repose. *See § 516.097, RSMo 1986; Blaske v. Smith & Entzeroth, Inc.*, 821 S.W.2d 822 (Mo. banc 1991). The two year period, however, is short for a statute of repose although not necessarily for one involving medical malpractice. *See McGovern, supra*, at 632. The minors exception and foreign object exception appear to be exceptions more usually associated with a statute of limitations, not a statute of repose. Further, the ten year limitation at the end of the statute is on its face clearly a statute of repose. Resolution of the precise terminology to be applied to § 516.105 is not necessary in my opinion to determine the issue before us.

It is apparent that the General Assembly, dating back to at least 1921, has found it important to limit narrowly the time constraints in medical malpractice cases. The 1976 revision of § 516.105 was one of three bills passed in that session to address the issue of medical malpractice. *See Strahler, supra*, (Robertson, J., concurring). All were designed to reduce the incidence of malpractice suits. Section 516.105 must be viewed in the context of that legislation. It is not our prerogative to evaluate the wisdom of the legislative determination that the public interest warrants restriction of such litigation and prompt filing of such suits as are filed. That was the apparent thrust of the enactment of § 516.105 and the related legislation. *See* James Bartimus, et al., *Protecting Plaintiff's Rights in the Medical Malpractice "Crisis"*, 53 U.M.K.C.L.Rev. 27, 32–35 (1984). The ten year restriction on discovery of foreign objects in the body and the attempt to reduce the time for minors to bring suit to twelve years evidence that intent. Elimination of the mental incompetency and felon disabilities is further evidence. I believe the fact situation now before us must be viewed within the context of the legislative attempts to regulate the number and timeliness of malpractice actions.

Neither *Walker v. Rinck*, 604 N.E.2d 591 (Ind.1992), nor *Bergstreser v. Mitchell*, 577 F.2d 22 (8 Cir.1978), upon which the majority rely, discusses the statutes involved in terms of the history of their enactment. Both assume that regardless of the time elapsing between the act of neglect and the conception of the plaintiff the statutory exception applies. What they assume is, in fact, the issue before us. I find neither case instructive nor persuasive on that issue.

During the two year period after the occurrence plaintiff had not been conceived and therefore could sustain no damage, and no cause of action existed. He was not under any legal disability for disability connotes existence, which plaintiff did not have. *Black's, supra*, at 461; *Webster's Third International Dictionary* at 642 (14th ed. 1961). He incurred no legal disability until after the time established in § 516.105 had passed. Prior to reaching a status of disability the time specified in the statute had expired and with it plaintiff's after arising cause of action.[3] It is presumptively possible, although admittedly remote, that, given the number of years during which a woman is capable of child-bearing, the cause of action here could be brought, under the majority reasoning, fifty or more years after "the date of the occurrence of the act of neglect complained of". I am unable to conclude that § 516.105 was intended by the General Assembly to allow time frames of that magnitude. The plaintiff was not the patient nor even the fetus of the patient at the time of the act of neglect. The General Assembly could consider it reasonable to expect a medical provider to take precautions to be able to defend a claim where the existence of the plaintiff becomes known within two years and nine months after the act of neglect but unreasonable to expect such precautions for some indeterminate time thereafter. The statute operates unfairly to this plaintiff and achieves a truly unjust result. But it oper-

3. Section 516.270, RSMo 1986, provides that "No person shall avail himself of any disability herein enumerated, unless such disability existed at the time his right of action or of entry accrued." While it is questionable that this section applies to medical malpractice it is further indication that the statutory intent is to protect persons suffering from a legal disability which prevents their access to court.

ates with equal injustice on adults who suffer from undiscovered malpractice consequences. The General Assembly has made the determination that such injustice is outweighed by the benefits to the public health and weal from restriction of malpractice litigation. We are bound by that determination.

I would affirm the judgment of the trial court.