218 N.J. Super. 348 (1987)
527 A.2d 921
TOWNSHIP OF CHERRY HILL, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
CONTI CONSTRUCTION COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 3, 1987.
Decided June 29, 1987.
Before Judges BRODY and D'ANNUNZIO.
*349 Ralph J. Kmiec argued the cause for appellant.
Robert J. Annett argued the cause for respondent (Henry S. Buchanan, attorney; Robert A. McLarty, Jr., on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
The parties stipulated at trial that while engaged in widening a state highway, defendant Conti Construction Company accidentally ruptured a natural gas main. We will assume, as have the parties, that the rupture was proximately caused by Conti's negligence. Plaintiff Township evacuated the neighborhood until the main was repaired. The Township brought this action to recover from Conti $4,220.80, expenses it had incurred in providing services to meet the emergency. Almost the entire sum is for police overtime. The trial judge held that the Township was not entitled to recover. We affirm.
Government has traditionally assumed the ultimate cost of providing basic emergency services that protect the community. The "fireman's rule" is a familiar example of judicial recognition of that policy. Although derived from the tort concept of "assumption of risk," the rule is justified by more than a fireman's or policeman's assumption of the risk of physical injury. It also recognizes the public policy of spreading the risk of certain losses by shifting from a negligent tortfeasor to the taxpayers the financial responsibility for a fireman's or policeman's economic loss resulting from an injury incurred while responding to an emergency:
[I]n the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences. Hence, for that risk, the fireman should receive appropriate compensation from the public he serves, both in pay which reflects the hazard and in workmen's compensation benefits for the consequences of the inherent risks of the calling. [Krauth v. Israel Geller and Buckingham Homes, Inc., 31 N.J. 270, 274 (1960).]
For these same policy reasons a public entity that appropriates tax revenues to provide emergency services to the public *350 may not recover the cost of those services from a person whose negligence creates an emergency that requires their use. City of Flagstaff v. Atchison, Topeka & Santa Fe, 719 F.2d 322 (9th Cir.1983); City of Pittsburgh v. Equitable Gas Co., 512 A.2d 83 (Pa.Cmwlth. 1986); City of Bridgeton v. B.P. Oil, Inc., 146 N.J. Super. 169, 178-179 (Law Div. 1976).
A public entity may, however, change this usual policy by specific legislation or regulation. We note, for instance, that persons who either intentionally or unintentionally discharge hazardous substances directly or indirectly into the waters of this State must reimburse the administrator of the New Jersey Spill Compensation Fund for cleanup and removal costs pursuant to the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et seq.
Affirmed.