OPINION
The city of Cincinnati appeals from the trial court's dismissal of its complaint against fifteen firearms manufacturers, a firearms distributor, and three firearms trade associations. For the reasons that follow, we affirm the court's judgment that the complaint failed to state a claim upon which relief could be granted.
 Procedural History
The city's broad-ranging assertions included the following claims: (1) strict product liability for the defective condition of firearms; (2) strict product liability for failure to warn of the risks of firearms; (3) negligence; (4) negligent failure to warn; (5) unfair and deceptive advertising practices; (6) public nuisance; (7) fraud; (8) negligent misrepresentation; and (9) unjust enrichment. The city alleged that, as a result of the defendants' conduct in manufacturing or distributing handguns, the city had suffered a host of problems, ranging from the costs of responding to shootings to decreased property values and tax revenues, and to Cincinnatians' general fears resulting from criminal activity and injuries caused by firearms. The city sought injunctive relief, compensatory and punitive damages, restitution, and disgorgement of profits.
In its single assignment of error, the city claims that the trial court erred in granting the defendants' motions to dismiss. But the city contests only the dismissal of its claims for product liability, negligence, public nuisance, and unjust enrichment. The city has abandoned its claims for unfair and deceptive advertising practices, fraud, and negligent misrepresentation.
 Civ.R. 12(B)(6)
To determine whether a complaint states a claim upon which relief may be granted, all factual allegations of the complaint must be presumed true.[1] A trial court may dismiss a complaint under Civ.R. 12(B)(6) only where it appears beyond doubt that the plaintiff can prove no set of facts warranting recovery.[2] Under the rules of notice pleading, the plaintiff must provide a short and plain statement of its claims and the grounds upon which they are based, so that the defendant has fair notice of what is at issue.[3]
Nowhere in its forty-three-page complaint does the city set forth facts that, if proved, would provide a basis for recovery.[4] The city claims that it has sustained significant expenses for medical, police, court, corrections, and emergency services as a result of shootings and the unauthorized possession of firearms. The city also claims that the manufacture and distribution of firearms has caused its citizens to be injured and fearful, and that it has suffered from decreased property values and tax revenues.
Using a shotgun approach in its complaint, the city has made its broad assertions without alleging a direct injury caused by a particular firearm model or its manufacturer. We hold that the city's attempts to stand in the shoes of its citizens and to recover its municipal costs must fail.
 Strict Product Liability
All common-law claims for product liability survive the 1988 enactment of the Ohio Products Liability Act, R.C. 2307.71 etseq., unless they are specifically covered by the act.[5]
The act "collects all product liability claims into a standard set of theories of recovery * * *."[6] In this case, the city's product-liability claims against the manufacturers include allegations of (1) defective condition and (2) failure to warn. Both of these claims are specifically covered by the act, so we look to the act to determine whether the city has stated claims upon which relief may be granted.[7]
 1. The City is Not a Proper Plaintiff
Under R.C. 2307.71(M), the definition of a "product liability claim" includes one that seeks to recover compensatory damages arising from the following:
 (1) the design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of a product; [or]
 (2) any warning or instruction, or lack of warning or instruction associated with a product[.] * * *
One essential element of such a claim is the occurrence of "harm," which means "death, physical injury to person, serious emotional distress, or physical damage to property * * *." Economic loss is not itself compensable unless the injured party has also suffered one of the statutory forms of harm. In this case, it is clear from the complaint that the city, as a corporate entity, can prove no harm to itself in the form of death, physical injury, or emotional distress. Moreover, there is no allegation of any physical damage to the city's property. Under these circumstances, its product-liability claims under the act fail as a matter of law.
2. The City Cannot Recover for Economic Loss Alone
In each of its product-liability claims, the city has alleged merely that it has suffered "actual injury and damages including, but not limited to, significant expenses for police, emergency, health, corrections, prosecution and other services." These municipal costs are unrecoverable in this case because they are no more than economic loss, which is defined as "direct, incidental, or consequential pecuniary loss * * *." Economic loss is not "harm" under the act and is not compensable where, as here, the injured party has not separately suffered from death, physical injury to person, serious emotional distress, or physical damage to property.[8]
 3. The City Has Failed to Identify a Particular Product,Defect, or Defendant
In order to state a product-liability claim for defective design, the plaintiff must allege (1) a defect in the product manufactured and sold by the defendant; (2) that the defect existed at the time the product left the manufacturer's hands; and (3) that the defect was the direct and proximate cause of the plaintiff's injuries or loss.[9] As long as there is a set of facts, consistent with the plaintiff's complaint, that would allow the plaintiff to recover, a trial court should not grant a motion to dismiss a claim predicated upon these elements.[10]
Nowhere in its forty-three-page complaint does the city identify a single defective condition in a particular model of gun at the time it left its particular manufacturer. In fact, out of the complaint's 162 counts, the city's sole assertion naming a single manufacturer and its gun does not even implicate any of the defendants, because the harm was caused by the intentional act of a criminal, not by the manufacturer:
 In February, 1998, Cincinnati Police Officer Kathleen Conway was ambushed and shot four times in her lower abdomen and thigh with a Smith Wesson .357 magnum.
Allowing the city to proceed on these indistinct allegations would fly in the face of fairness and the purposes of notice pleading. The complaint must contain some notice to show the defendant that the plaintiff is entitled to relief.[11] This concept of notice pleading, embodied in Civ.R. 8(A), serves "to simplify pleadings to a `short and plain statement of the claim' and to simplify statements of the relief demanded * * * to the end that the adverse party will receive fair notice of the claim and an opportunity to prepare his response thereto."[12] The city has not even alleged that the shootings for which it seeks recovery were committed with a firearm lacking the design features that the city believes should be implemented. Without identifying a particular manufacturer, a particular gun, or a particular defective condition that caused direct injury, the city's product-liability claims must fail.
Rather than targeting a specific manufacturer, product, and defect, the city makes generic claims against all the manufacturers in an effort to gloss over the fatal omissions in its complaint. The city cannot pursue a market-share theory of liability, under which there is no requirement to identify a particular tortfeasor, because this theory has not survived the enactment of the Ohio Products Liability Act.[13] Nor may the city proceed on a theory of alternative liability, because not all of the possible tortfeasors are named in its complaint. The city itself admits that it has relied on instances where no gun was recovered and no manufacturer can be identified. Not only does the city ignore the fact that it has not named all gun manufacturers, but it has also overlooked the other obvious "possible tortfeasors," the shooters themselves.[14]
 4. The City Has Failed to State a Failure-to-Warn Claim
The city's failure-to-warn claims under the act miss the mark, too, not only due to the city's failure to identify injuries caused by specific manufacturers or products, but also because the manufacturers have no duty to give warnings about the obvious dangers of handguns. In this respect, R.C. 2307.76(B) provides the following:
 A product is not defective due to lack of warning or instruction or inadequate warning or instruction as a result of the failure of its manufacturer to warn or instruct about an open and obvious risk or a risk that is a matter of common knowledge.
The city has alleged that the manufacturers have failed to adequately warn gun owners about (1) the risks that minors and other unauthorized users may gain access to handguns; (2) the proper storage of handguns; (3) the possibility that a round may remain in a gun's firing chamber; and (4) the potential for guns to fire with the ammunition magazine removed.
The trial court stated, "The [c]ourt finds as a matter of law that the risks associated with the use of a firearm are open and obvious and matters of common knowledge." We agree.
 A manufacturer has no duty to warn of an obvious danger. Knives are sharp, bowling balls are heavy, bullets cause puncture wounds in flesh. The law has long recognized that obvious dangers are an excluded class. [Footnote deleted.] As the colorful Seventh Circuit Judge Richard Posner once wrote in an Indiana federal case, if you "go to the zoo and put your hand through the lion's cage, and the lion bites your hand off, * * * you do not have an action against the zoo."[15]
The dangers of a gun are obvious and a matter of common knowledge, so no warning is required.[16] The city's failure-to-warn claims accordingly fail as a matter of law.
 Negligence Claims
In order to establish actionable negligence, a plaintiff must demonstrate the existence of a duty, a breach of that duty, and an injury proximately caused by the breach. Typically, a duty may be established by common law, by legislative enactment, or by the particular facts and circumstances of the case.[17] The existence of a duty is a question of law for the court.[18]
There is no set formula for determining whether a duty exists.[19]
Whether a duty exists depends largely on the foreseeability of the injury to a person in the plaintiff's position. The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act.[20]
The city claims that the gun manufacturers and trade associations may be held liable for foreseeable injury inflicted as a result of the criminal or careless acts of third persons. However, foreseeability alone is not enough to create liability.[21] Generally, under Ohio law, there is no duty to prevent a third person from causing harm to another in the absence of a special relationship between the parties.[22]
In Gelbman v. Second Natl. Bank of Warren,[23] the Ohio Supreme Court cited with approval Section 315 of the Restatement of the Law 2d, Torts (1965), which provides:
 There is no duty to control the conduct of a third person as to prevent him from causing physical harm to another unless
 (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
 (b) a special relation exists between the actor and the other which gives to the other a right to protection.
Relationships that give rise to a duty to control a third person's conduct include the following: (1) parent and child; (2) master and servant; and (3) custodian and person with dangerous propensities.[24] Relationships that result in a duty to protect others include the following: (1) common carrier and passengers; (2) innkeeper and guests; (3) possessor of land and invitee; (4) custodian and person taken into custody; and (5) employer and employee.[25] These relationships reflect some type of control over the third person or the premises involved.
The alleged harm in this case resulted from intentional and unintentional shootings, and the illegal possession of firearms. In each situation, a third party, either a shooter or a possessor, was involved. We hold that, because no special relationship existed, the manufacturers and trade associations had no duty to the city to prevent third persons from causing harm, whether that harm resulted from a shooting or simply from unauthorized possession.
The cases relied on by the city do not persuade us otherwise. In Taylor v. Webster,[26] the Ohio Supreme Court concluded that the defendant's duty arose pursuant to statute. In that case, the defendant owned an air gun and permitted its use by her ten-year-old son. One of the son's playmates took the gun and fired it at another playmate, injuring his eye. The Ohio Supreme Court held that, since R.C. 2903.06[27] imposed upon the defendant a specific duty for the protection of others, her failure to observe that duty constituted negligenceper se. There is no similar statutory provision that would give rise to a duty in this case.
Nor are we persuaded by the reasoning of Pavlides v. Niles GunShow, Inc.[28] In that case, juveniles stole some handguns from a gun show and then stole a car. One of the juveniles then shot the plaintiffs, who were trying to stop the juveniles. Although the trial court granted summary judgment in favor of the gun-show promoter on the basis that there was no duty owed to the plaintiffs, the Fifth Appellate District reversed. The appellate court held that reasonable minds could conclude that it was foreseeable to the gun-show promoter that a child might steal a firearm from the show and then use it criminally.
First, we point out that Pavlides involved a gun-show promoter. The case did not involve the manufacturer of the gun used to injure the victims or any type of trade association. A manufacturer or trade association is even further removed from the victims, as far as any potential foreseeability is concerned. Also, the Ohio Supreme Court made clear in Simpson v. Big BearStores Co.,[29] decided after Pavlides, that foreseeability alone is not enough to establish a duty.
In Simpson, the plaintiff was injured during a robbery that occurred on property adjacent to the defendant grocery store. The court held that, absent a special relationship, the store had no duty to prevent the third person from harming the plaintiff. As the dissent in a later appeal in Pavlides pointed out, Simpson
requires that a special relationship exist between the plaintiff and the defendant before a duty will be recognized in cases where the plaintiff is injured by a third person:
 It is clear that no special relationship existed between the plaintiff and the defendant [gun-show promoter] in this case. Therefore, to find some duty on the part of defendant is to extend the concept of imposing financial liability for the criminal conduct of a third person to new heights.[30]
In this case, even if we assume that the acts of third persons are in some way foreseeable to the manufacturers and trade associations, there is still no duty imposed by law in the absence of a special relationship between the parties. Because no special relationship exists, the manufacturers and trade associations have no duty to the city to prevent a third party from causing harm. On this basis, courts have uniformly rejected attempts by plaintiffs to hold gun manufacturers and distributors liable for the criminal misuse of their products.[31]
 Public Nuisance
The city claims that it has been injured by a public nuisance arising from the defendants' conduct in designing, marketing, and distributing guns in ways that unreasonably interfere with public health and safety. But there is no such claim upon which relief may be granted in this case.
1. Nuisance Law Does Not Apply to the Design of Products
The Supreme Court of Ohio has refused to extend the law of public nuisance to the design and construction of products. InFranks v. Lopez,[32] the court considered whether a highway sign could be considered a public nuisance because of its design flaws:
 Appellants * * * have asked us to expand our nuisance definition to include design and construction defects and the failure to erect signage. This we decline to do. This court has never held that defective design or construction or lack of signage constitutes a nuisance. These categories simply do not constitute a nuisance as this term has been defined by this court.[33]
This reasoning is consistent with that of other courts. For example, the Eighth Circuit Court of Appeals has noted the refusal of courts to extend nuisance law to product-design-and-distribution claims.[34] To do otherwise, the court reasoned, would make nuisance law "a monster that would devour in one gulp the entire law of tort."
2. The City Cannot State a Claim for Absolute Nuisance
A public nuisance may be either absolute or qualified.[35]
The essence of an absolute nuisance is that, no matter how careful a person is, the activity is inherently injurious and cannot be conducted without causing damage.[36] An absolute nuisance is based upon either intentional conduct or abnormally dangerous conditions, so strict liability is imposed.[37] In this case, the city has alleged that the defendants intentionally and recklessly marketed, distributed, and sold guns that they knew would be possessed and used illegally.
An activity that is authorized by law cannot be a public nuisance or an absolute nuisance.[38] "This is especially true where a comprehensive set of legislative acts or administrative regulations governing the details of a particular kind of conduct exist."[39]
The Second Amendment to the United States Constitution and Article I, Section 4 of the Ohio Constitution guarantee the right of the people to keep and bear arms. But the regulation of gun manufacturing, distribution and sales is apparent at federal, state and local levels. All firearm manufacturers, importers, and dealers must be licensed by the federal government.[40]
Federal law regulates the shipment of firearms to and from licensed manufacturers, licensed importers, licensed firearms dealers, and licensed collectors.[41] Every manufacturer and importer must legibly identify each firearm with an individual serial number, the firearm model, the caliber or gauge, the name of the manufacturer, and either the city or the state of its place of business.[42] These markings must not be susceptible to alteration or removal.[43]
No firearm may be shipped if the importer's or manufacturer's serial number has been removed or altered.[44] Firearms manufacturers and importers must keep detailed records of each firearm they make or sell, including, for example, records of importation, production, shipment, receipt, sale, or other disposition,[45] and of the type, model, caliber or gauge, manufacturer, country of manufacturer, and serial number.[46]
Even the city has passed municipal ordinances to control firearms distribution. The ordinances place restrictions on the transfer of firearms,[47] establish a waiting period for the transfer of firearms,[48] and ban the ownership, possession and sale of certain semi-automatic firearms.[49] In sum, the city has no claim for public or absolute nuisance arising from the defendants' heavily regulated distribution of firearms, because "what the law sanctions cannot be said to be a public nuisance."[50]
 3. No Qualified Nuisance
In order for a duly licensed and regulated gun manufacturer or trade association to be found liable for maintaining a nuisance, negligence must be established under the theory of a qualified nuisance. A qualified nuisance consists of a lawful act that is so negligently or carelessly done that it creates an unreasonable risk of harm resulting in injury to another.[51] "The allegations of nuisance and negligence therefore merge, as the nuisance claims rely upon a finding of negligence."[52] In an action for nuisance based on negligence, there must be some duty and a breach of that duty.[53] As we have stated earlier, however, there is no duty as a matter of law in this case, so the city cannot maintain an action for qualified nuisance.
 Unjust Enrichment
The city maintains that the sale of handguns has resulted in an increase in the city's expenditures for medical care and law enforcement. But, to maintain a cause of action for unjust enrichment under Ohio law, the plaintiff must allege the following: (1) a benefit conferred by the plaintiff; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment.[54] The city has not, and cannot, allege that its expenditures have conferred a benefit upon any of the manufacturers. The city has not, and cannot, allege that the manufacturers have been aware of any so-called benefit. The beneficiaries of the city's expenditures are its own residents, not the manufacturers. Under these circumstances, the city has no claim of unjust enrichment as a matter of law.
The City Cannot Pursue Remote and Derivative Claims
Even if the city's complaint did not suffer from the infirmities we have already discussed, the city's claims would still be barred by the doctrine of remoteness. The doctrine of remoteness bars recovery in tort for indirect harm suffered as a result of injuries directly sustained by another person.[55]
As the United States Supreme Court has stated, "[A] plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand at too remote a distance to recover."[56] There must be a direct relation between the alleged injury and the defendant's conduct.[57] So a plaintiff must allege not only that the defendant's acts have caused the plaintiff's injury, and that the injury was reasonably foreseeable, but also that the injury was direct.[58]
The Holmes court identified three policy reasons justifying the general principle that indirect injuries are too remote to support recovery. First, the more indirect an injury is, the more difficult it becomes to determine the amount of the plaintiff's damages attributable to the defendant's wrongdoing. Second, recognizing claims by the indirectly injured would require courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the wrongdoing, in order to avoid the risk of multiple recoveries. Finally, struggling with the first two policy concerns is not necessary where there are directly injured parties who can remedy the harm without these attendant problems.[59]
The city claims that the Holmes factors weigh in favor of a conclusion that "the [c]ity should be permitted to recover costs of providing services to injured victims of [the defendants'] wrongdoing." We disagree. First, if a citizen is injured by gunfire, other independent factors obviously come into play, such as criminal conduct, drug or alcohol abuse, or other misconduct by the gun owner. These are just some of the factors that would make it very difficult to determine what portion of a given injury should be attributed to a gun manufacturer or a trade association. Second, recognizing the city's claims for recovery on the basis of injuries to its citizens would require complicated rules apportioning damages to avoid multiple recoveries by shooting victims or property owners and the city, or unfairly holding one defendant liable for another defendant's misconduct. Finally, a directly injured citizen is in a better position to sue the defendants for his or her injury.
The city claims that its expenses and lost revenues constitute direct injury in that they are not recoverable by another party. However, similar arguments made by union benefit funds against tobacco companies have been rejected by numerous courts.[60]
In such cases, the funds had sought to recover medical payments made on behalf of their members, as well as damages for "harm to [their] infrastructure, financial stability, [and] ability to project costs."[61] The pivotal question was viewed to be "whether the damages a plaintiff sustains are derivative of injury to a third party."[62] As one court noted,
 Ultimately, whether plaintiffs' injuries are labeled as "infrastructure harm" or "harm to financial stability," their damages are entirely derivative of the harm suffered by plan participants as a result of using tobacco products. Without injury to the individual smokers, the Funds would not have incurred any increased costs in the form of the payment of benefits, nor would they have experienced the difficulties of cost prediction and control that constituted the crux of their infrastructure harm. Being purely contingent on harm to third parties, these injuries are indirect.[63]
In this case, the city has alleged costs that would not exist without a direct injury to a shooting victim. Therefore, the city's alleged injuries derive solely from harm to its citizens and are too remote to support a cognizable claim.
The city argues that it incurs expenses even when no other person suffers an injury. The city cites as examples (1) its costs for detection, school security, and law enforcement, incurred because juveniles have access to guns; (2) its costs for law enforcement where a shooting occurs, but no person or property is injured; and (3) its revenue losses caused by instances of illegal gun possession and criminal misuse of guns. Obviously, the Holmes justifications apply with equal force to these instances. Costs for detection and law enforcement exist not only for guns, but for all other types of weapons. Other factors, such as the conduct of the weapon owner or possessor, would immediately become involved to make it impossible to parse out the degree of harm caused by the manufacturer of the gun used. Attempting to allocate these costs to a gun manufacturer, as opposed to, for example, a knife manufacturer, would be ludicrous.
The City Cannot Recover its Municipal Costs
The city has alleged in its complaint that, as a result of the defendants' conduct, it has sustained significant financial losses for medical, police, court, corrections and emergency services. However, we agree with the trial court's conclusion that "the [c]ity may not recover for expenditures for ordinary public services which it has the duty to provide."[64]
"The general rule is that public expenditures made in the performance of governmental functions are not recoverable."[65]
This rule, which is grounded in public-policy considerations, applies even if a party's negligence has created an emergency that requires the use of these services.[66] As Justice (then Judge) Kennedy has explained,
 [W]e conclude that the cost of public services for protection from fire or safety hazards is to be borne by the public as a whole, not assessed against the tortfeasor whose negligence creates the need for the service. See City of Bridgeton v. B.P. Oil, Inc., 146 N.J. Super. 169, 369 A.2d 49 (1976). Where such services are provided by the government and the costs are spread by taxes, the tortfeasor does not expect a demand for reimbursement.
* * *
 Here governmental entities themselves currently bear the cost in question, and they have taken no action to shift it elsewhere. If the government has chosen to bear the cost for reasons of economic efficiency, or even as a subsidy to the citizens and their business, the decision implicates fiscal policy; the legislature and its public deliberative processes, rather than the court, is the appropriate forum to address such fiscal concerns.[67]
In a case where the District of Columbia sued Air Florida, Inc., for recovery of the costs of emergency services and cleanup after a plane crash, the Court of Appeals for the District of Columbia Circuit upheld the dismissal of the district's claim for reimbursement, noting the following:
 We are especially reluctant to reallocate risks where a governmental entity is the injured party. It is critically important to recognize that the government's decision to provide tax-supported services is a legislative policy determination. It is not the place of the courts to modify such decisions. Furthermore, it is within the power of the government to protect itself from extraordinary emergency expenses by passing statutes or regulations that permit recovery from negligent parties.[68]
 Conclusion
The city has failed to state any claims against the defendants that would allow it to recover for its municipal expenses. Were we to decide otherwise, we would open a Pandora's box. For example, the city could sue the manufacturers of matches for arson, or automobile manufacturers for traffic accidents, or breweries for drunken driving.
Guns are dangerous. When someone pulls the trigger, whether intentionally or by accident, a properly functioning gun is going to discharge, and someone may be killed. The risks of guns are open and obvious.
We hold that the trial court properly dismissed the city's complaint. The city's claims are too remote and seek derivatively what should be claimed only by citizens directly injured by firearms. The city cannot recover its municipal costs. We overrule its assignment of error and affirm the judgment of the trial court.
 ___________________________ Winkler, Judge.
 Hildebrandt, P.J., concurs separately.
Painter, J., concurs in judgment only.
[1] See Mitchell v. Lawson Milk Co. (1988), 40 Ohio St.3d 190,192, 532 N.E.2d 753, 756.
[2] See Taylor v. London (2000), 88 Ohio St.3d 137, 139,723 N.E.2d 1089, 1091, citing O'Brien v. University Community TenantsUnion (1975), 42 Ohio St.2d 242, 327 N.E.2d 753, syllabus.
[3] Civ.R. 8(A)(1); see Chatfield and Woods Sack Co., Inc. v.Nusekabel (Oct. 22, 1999), Hamilton App. No. C-980315, unreported, citing Fancher v. Fancher (1982), 8 Ohio App.3d 79, 83,455 N.E.2d 1344, 1348.
[4] See Illinois Controls, Inc. v. Langham (1994), 70 Ohio St.3d 512,526, 639 N.E.2d 771, 782.
[5] See Carrel v. Allied Products Corp. (1997), 78 Ohio St.3d 284,289, 677 N.E.2d 795, 800.
[6] Perkins v. Wilkinson Sword, Inc. (1998), 83 Ohio St.3d 507,509, 700 N.E.2d 1247, 1249.
[7] See R.C. 2307.75 (defective design) and R.C. 2307.76
(failure to warn); see, also, Carrel, supra.
[8] See R.C. 2307.71(B) and (G); R.C. 2307.79; see, also,LaPuma v. Collinwood Concrete (1996), 75 Ohio St.3d 64,661 N.E.2d 714, syllabus.
[9] See State Auto Mut. Ins. Co. v. Chrysler Corp. (1973),36 Ohio St.2d 151, 304 N.E.2d 891, syllabus; Lonzrick v. RepublicSteel Corp. (1966), 6 Ohio St.2d 227, 218 N.E.2d 185; Temple v.Wean United, Inc. (1977), 50 Ohio St.2d 317, 364 N.E.2d 267;Friedman v. General Motors Corp. (1975), 43 Ohio St.2d 209,331 N.E.2d 702; Bowling v. Heil Co. (1987), 31 Ohio St.3d 277, 286,511 N.E.2d 373, 380.
[10] See York v. Ohio State Highway Patrol (1991), 60 Ohio St.3d 143,145, 573 N.E.2d 1063, 1065.
[11] See Civ.R. 8(A).
[12] See Chatfield, supra.
[13] Sutowski v. Eli Lilly Co. (1998), 82 Ohio St.3d 347,355, 696 N.E.2d 187, 193, reconsideration denied (1998), 83 Ohio St.3d 1419,698 N.E.2d 1008.
[14] See Minnich v. Ashland Oil Co. (1984), 15 Ohio St.3d 396,473 N.E.2d 1199; Goldman v. Johns-Manville Sales Corp. (1987),33 Ohio St.3d 40, 45-46, 514 N.E.2d 691, 696-697.
[15] O'Reilly and Cody, Ohio Products Liability Manual (1992), Section 10.13, 147.
[16] See, also, Nadel v. Burger King Corp. (1997), 119 Ohio App.3d 578,695 N.E.2d 1185 (Hildebrandt, J., dissenting), appeal not allowed (1997), 80 Ohio St.3d 1413, 684 N.E.2d 706, citingGawloski v. Miller Brewing Co. (1994), 96 Ohio App.3d 160,644 N.E.2d 731; Hanlon v. Lane (1994), 98 Ohio App.3d 148,648 N.E.2d 26, appeal not allowed (1995), 71 Ohio St.3d 1491, 646 N.E.2d 467 (no warning required for the danger of carbon monoxide where its lethality is a matter of common knowledge).
[17] Chambers v. St. Mary's School (1998), 82 Ohio St.3d 563,565, 697 N.E.2d 198, 200, reconsideration denied (1998), 83 Ohio St.3d 1453,700 N.E.2d 334.
[18] Mussivand v. David (1989), 45 Ohio St.3d 314, 318,544 N.E.2d 265, 270.
[19] Id.
[20] Menifee v. Ohio Welding Products (1984), 15 Ohio St.3d 75,77, 472 N.E.2d 707, 710.
[21] Simpson v. Big Bear Stores Co. (1995), 73 Ohio St.3d 130,134, 652 N.E.2d 702, 705.
[22] Id.
[23] (1984), 9 Ohio St.3d 77, 78, 458 N.E.2d 1262, 1263.
[24] See Restatement of the Law 2d, Torts, Sections 316 through 319.
[25] See Restatement of the Law 2d, Torts, Sections 314(A), 314(B) and 320.
[26] (1967), 12 Ohio St.2d 53, 231 N.E.2d 870.
[27] R.C. 2903.06 provides, "No person shall sell, barter, furnish, or give to a minor under the age of seventeen years, an air gun * * *, or, being the owner or having charge or control thereof, knowingly permit it to be used by a minor under such age. * * *"
[28] (1994), 93 Ohio App.3d 46, 637 N.E.2d 404.
[29] Supra, at fn. 21.
[30] Pavlides v. Niles Gun Show, Inc. (1996), 112 Ohio App.3d 609,620, 679 N.E.2d 728, 735 (Reece, J., concurring in part and dissenting in part), appeal not allowed (1996), 77 Ohio St.3d 1473,673 N.E.2d 138.
[31] See, e.g., First Commercial Trust Co. v. Colt's Mfrg. Co.,Inc. (C.A.8, 1996), 77 F.3d 1081; Addison v. Cody Wayne Williams
(La.Ct.App. 1989), 546 So.2d 220; Knott v. Liberty Jewelry andLoan, Inc. (1988), 50 Wn. App. 267, 748 P.2d 661; Armijo v. ExCam, Inc. (D.N.M. 1987), 656 F. Supp. 771, affirmed (1988),843 F.2d 406; Patterson v. Rohm Gesellschaft (N.D.Texas 1985),608 F. Supp. 1206; Linton v. Smith Wesson (1984), 127 Ill. App.3d 676,469 N.E.2d 339; King v. R G Industries, Inc. (1990), 182 Mich. App. 343,451 N.W.2d 874; but, see, Kelly v. R G Industries, Inc.
(1985), 304 Md. 124, 497 A.2d 1143.
[32] (1994), 69 Ohio St.3d 345, 632 N.E.2d 502.
[33] Id. at 349, 632 N.E.2d at 506; see, also, Gray v. SKConstruction Co. (June 3, 1999), Franklin App. No. 98AP-947, unreported, reversed on other grounds (1999), 87 Ohio St.3d 262,719 N.E.2d 548.
[34] See Tioga Public School Dist. v. United States Gypsum Co.
(C.A.8, 1993), 984 F.2d 915, 920, citing City of Manchester v.National Gypsum Co. (D.R.I. 1986), 637 F. Supp. 646, 656; Town ofHooksett Sch. Dist. v. W.R. Grace Co. (D.N.H. 1984), 617 F. Supp. 126,133; Detroit Bd. of Educ. v. Celotex Corp. (1992),196 Mich. App. 694, 493 N.W.2d 513.
[35] See id.
[36] See Metzger v. Pennsylvania, Ohio Detroit RR Co. (1946),146 Ohio St. 406, 66 N.E.2d 203, paragraph one of the syllabus.
[37] See Jennings Buick, Inc. v. Cincinnati (1978), 56 Ohio St.2d 459,466, 384 N.E.2d 303, 307.
[38] See Crawford v. National Lead Co. (S.D.Ohio 1989),784 F. Supp. 439; see, also, Allen Freight Lines, Inc. v. ConsolidatedRail Corp. (1992), 64 Ohio St.3d 274, 595 N.E.2d 855; MingoJunction v. Sheline (1935), 130 Ohio St. 34, 196 N.E. 897.
[39] See Brown v. County Commissioners of Scioto County (1993),87 Ohio App.3d 704, 715, 622 N.E.2d 1153, 1159.
[40] See Section 178.41, Title 27, C.F.R.; Section 923, Title 18, U.S.Code.
[41] See Section 923, Title 18, U.S.Code.
[42] See Section 178.92, Title 27, C.F.R. 
[43] See id.
[44] See Section 178.34, Title 27, C.F.R. 
[45] See Section 178.121, Title 27, C.F.R. 
[46] See Sections 178.122 and 178.123, Title 27, C.F.R. 
[47] See Cincinnati Municipal Code 708-18.
[48] See Cincinnati Municipal Code 708-33.
[49] See Cincinnati Municipal Code 708-37.
[50] See Mingo, supra, at 41, 196 N.E. at 900.
[51] See Brown, supra, at 713, 622 N.E.2d at 1159.
[52] Allen, supra, at 276, 595 N.E.2d at 856.
[53] See Metzger, supra, at 410, 66 N.E.2d at 205.
[54] See Telephone Management Corp. v. The Goodyear Tire Rubber Co. (N.D.Ohio. 1998), 32 F. Supp. 960, 972, citing R.J.Wildner Constructing Co., Inc. v. Ohio Turnpike Commn. (N.D.Ohio. 1996), 913 F. Supp. 1031, 1042; Hambleton v. R.G. Barry Corp.
(1984), 12 Ohio St.3d 179, 183, 465 N.E.2d 1298, 1302.
[55] See, e.g., Cincinnati Bell Telephone Co. v. Straley
(1988), 40 Ohio St.3d 372, 533 N.E.2d 764, citing Midvale Coal Co.v. Stroud (1949), 152 Ohio St. 437, 89 N.E.2d 673 (damages incidentally suffered by an employer because of a third party's act toward the employer's employee are too remote to be recovered from the third party); Tanzi v. The New York Central Rd. Co.
(1951), 155 Ohio St. 149, 98 N.E.2d 39, paragraph four of syllabus; Grover v. Eli Lilly Co. (1992), 63 Ohio St.3d 756,762, 591 N.E.2d 696, 700.
[56] Holmes v. Securities Investor Protection Corp. (1992),503 U.S. 258, 268-269, 112 S.Ct. 1311, 1319, citing 1 J. Sutherland, Law of Damages (1882), 55-56.
[57] Id. at 268, 112 S.Ct. at 1319; see, also, Tanzi, supra, at syllabus (no liability if cause is remote); Grover, supra (because of remoteness of time and causation, pharmaceutical company's liability for a defective drug does not extend to persons never exposed to the drug, either directly or in utero).
[58] See Laborers Local 17 Health Benefit Fund v. PhillipMorris, Inc. (C.A.2, 1999), 191 F.3d 229, 235-236, certiorari denied (2000), ___ U.S. ___, 120 S.Ct. 799.
[59] Holmes, supra, at 269-270, 112 S.Ct. at 1319; see, also,Laborers, supra, at 236-237.
[60] See, e.g., Laborers, supra; Texas Carpenters HealthBenefit Fund v. Philip Morris, Inc. (C.A.5, 2000), 199 F.3d 788;Intl. Brotherhood of Teamsters v. Philip Morris, Inc. (C.A.7, 1999), 196 F.3d 818; Oregon Laborers-Employers Health WelfareTrust Fund v. Philip Morris, Inc. (C.A.9, 1999), 185 F.3d 957, certiorari denied (2000), ___ U.S. ___, 120 S.Ct. 789;Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris,Inc. (C.A.3, 1999), 171 F.3d 912.
[61] See Laborers, supra, at 239.
[62] Id. at 238-239.
[63] Id. at 239.
[64] See, also, Kodiak Island Borough v. Exxon Corp. (Alaska 1999), 991 P.2d 757.
[65] Koch v. Consolidated Edison Co. of New York, Inc. (1984),62 N.Y.2d 548, 560, 468 N.E.2d 1, 8, certiorari denied (1985),469 U.S. 1210, 105 S.Ct. 1177 (city could not recover costs for wages, salaries, overtime, and other benefits of police, fire, sanitation and hospital personnel arising from a blackout).
[66] Township of Cherry Hill v. Conti Construction Co. (1987),218 N.J. Super. 348, 349, 527 A.2d 921, 922, review denied (1987),108 N.J. 681, 532 A.2d 253.
[67] City of Flagstaff v. Atchison, Topeka Sante Fe Ry. Co.
(C.A.9, 1983), 719 F.2d 322.
[68] District of Columbia v. Air Florida, Inc. (C.A.D.C. 1984),750 F.2d 1077.